ANTHONY JOHNSON *v.* BRIAN PRELESKI,
STATE'S ATTORNEY
(SC 20104)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

Pursuant to statute (§ 52-593a (a)), "a cause or right of action shall not be lost . . . if the process to be served is personally delivered to a state marshal" before the expiration of the applicable statute of limitations and the process is served within thirty days of such delivery.

The petitioner, who had been convicted of the crime of murder, filed a petition for a new trial based on a claim of newly discovered evidence. The respondent state's attorney asserted as a special defense that the petition was time barred because the petitioner did not serve the petition on him until August 6, 2014, which was one day after the three year statutory (§ 52-582) limitation period for filing such petitions had expired. Thereafter, the trial court conducted an evidentiary hearing at which the office manager for the petitioner's attorney, P, testified that, at 4:59 p.m. on August 5, 2014, the final day of the limitation period, she had sent the petition by facsimile to the office of a state marshal, L, for service on the respondent. The petitioner also introduced into evidence the facsimile cover sheet, in which P instructed L to make service as soon as possible, as well as the facsimile transmission report, which indicated that the petition had been successfully delivered to L's fax machine at 5:01 p.m. on August 5, 2014. Although the facsimile transmission report indicated that the petition was successfully transmitted to L's office on August 5, 2014, and L served the respondent on August 6, 2014, L could not recall whether he had been in the office or if he personally had handled the petition on August 5, 2014. The trial court concluded that the petitioner failed to establish that he had served the petition on the respondent prior to the expiration of the statute of limitations because there was no proof that the process had been "personally delivered" to L on August 5, 2014, for purposes of § 52-593a (a). The court reasoned that L did not endorse the date of delivery on the return of service and that the petitioner provided no authority for the proposition that sending process to a marshal by facsimile constitutes personal delivery under § 52-593a (a). Accordingly, the trial court ren-

---

* This appeal originally was argued before a panel of this court consisting of Chief Justice Robinson and Justices McDonald, D'Auria, Mullins, Kahn and Ecker. Thereafter, Justice Palmer was added to the panel and has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

Johnson *v.* Preleski

dered judgment dismissing the petition, and the petitioner appealed to the Appellate Court, which agreed with the trial court that sending the petition by facsimile to a marshal did not constitute personal delivery sufficient to save the otherwise untimely petition under § 52-593a (a). On the granting of certification, the petitioner appealed to this court. *Held* that the petitioner presented sufficient evidence to establish that, by successfully sending the petition to L by facsimile on August 5, 2014, the process was personally delivered to a marshal within the meaning of § 52-293a (a) prior to the expiration of the applicable limitation period, and, accordingly, the Appellate Court incorrectly concluded that § 52-593a did not save the petition from dismissal: because the language of § 52-293a (a) was ambiguous as to whether a successful transmission of process by facsimile constitutes personal delivery, this court considered extratextual sources, including the statute's legislative history, and, following a consideration of case law interpreting the term "personal delivery," concluded that delivery of process via facsimile is not excluded as a proper method of personal delivery, as allowing a petitioner to satisfy the personal delivery requirement by sending process to a marshal by facsimile was consistent with the remedial purpose of the statute, which was to assist plaintiffs in preserving their causes of action, as long as process is delivered to a marshal for service prior to the expiration of the applicable statute of limitations; moreover, there was sufficient, circumstantial evidence to establish that the process was personally delivered to L prior to the expiration of the applicable limitation period, including P's testimony that she sent the process to L on the final day of the limitation period, the facsimile transmission report confirming delivery of the petition to L's fax machine on that date, the facsimile cover sheet instructing L to serve the process as soon as possible, and the fact that L served the process on the respondent the day after it was transmitted to L's office.

(*Three justices dissenting in one opinion*)

Argued February 22, 2019—officially released March 24, 2020**

*Procedural History*

Petition for a new trial following the petitioner's conviction of the crime of murder, brought to the Superior Court in the judicial district of New Britain, where the respondent asserted a special defense; thereafter, the case was tried to the court, *Young, J.*; judgment dismissing the petition, from which the petitioner appealed to the Appellate Court, *DiPentima, C. J.*, and *Keller* and

** March 24, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

140 JULY, 2020 335 Conn. 138

Johnson *v.* Preleski

*Beach*, *Js.*, which affirmed the trial court's judgment, and the petitioner, on the granting of certification, appealed to this court. *Reversed*; *judgment directed*.

*Norman A. Pattis*, for the appellant (petitioner).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Christian M. Watson*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

ROBINSON, C. J. The sole issue in this certified appeal is whether a successful facsimile (fax) transmission constitutes personal delivery under General Statutes § 52-593a,[1] a savings statute that permits a plaintiff to comply with a statute of limitations through timely personal delivery of process, prior to the expiration of the limitation period, to a state marshal for service. The petitioner, Anthony Johnson, appeals, upon our granting of his petition for certification,[2] from the judgment of the Appellate Court affirming the trial court's dismissal of his petition for a new trial brought against the respondent, Brian Preleski, the state's attorney for the New Britain judicial district, as time barred. *Johnson* v. *Preleski*, 174 Conn. App. 285, 286, 298, 166 A.3d

---

[1] General Statutes § 52-593a provides: "(a) Except in the case of an appeal from an administrative agency governed by section 4-183, a cause or right of action shall not be lost because of the passage of the time limited by law within which the action may be brought, if the process to be served is personally delivered to a state marshal, constable or other proper officer within such time and the process is served, as provided by law, within thirty days of the delivery.

"(b) In any such case, the officer making service shall endorse under oath on such officer's return the date of delivery of the process to such officer for service in accordance with this section."

[2] We granted the petitioner's petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly affirm the trial court's dismissal of the . . . petition for a new trial for failure to satisfy the 'personal delivery' requirement of . . . § 52-593a?" *Johnson* v. *Preleski*, 328 Conn. 925, 925–26, 182 A.3d 83 (2018).

Johnson *v.* Preleski

783 (2017). On appeal, the petitioner contends, inter alia, that the Appellate Court improperly disregarded the remedial purpose of § 52-593a in concluding that the successful fax transmission of process to the state marshal is not personal delivery as contemplated by that savings statute. We agree and, accordingly, reverse the judgment of the Appellate Court.

The record reveals the following undisputed facts and procedural history. On May 26, 2011, the petitioner was convicted of murder, and, on August 5, 2011, he was sentenced to forty-five years imprisonment. The Appellate Court affirmed the judgment of conviction following the petitioner's direct appeal. *State* v. *Johnson*, 149 Conn. App. 816, 831, 89 A.3d 983, cert. denied, 312 Conn. 915, 93 A.3d 597 (2014).

Subsequently, the petitioner sought to file a petition for a new trial pursuant to General Statutes § 52-270[3] on the basis of newly discovered evidence. At 4:59 p.m. on August 5, 2014, which was the final day prior to the expiration of the three year statutory limitation period for the petition,[4] Donna Peat, the office manager for

[3] General Statutes § 52-270 provides: "(a) The Superior Court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed, or the want of actual notice to any plaintiff of the entry of a nonsuit for failure to appear at trial or dismissal for failure to prosecute with reasonable diligence, or for other reasonable cause, according to the usual rules in such cases. The judges of the Superior Court may in addition provide by rule for the granting of new trials upon prompt request in cases where the parties or their counsel have not adequately protected their rights during the original trial of an action.

"(b) An affidavit signed by any party or his or her attorney shall be presumptive evidence of want of actual notice."

[4] The statute of limitations for this action; see General Statutes § 52-582 (a); expired three years after the petitioner's sentencing on August 5, 2011. See *Summerville* v. *Warden*, 229 Conn. 397, 426, 641 A.2d 1356 (1994) ("[t]he three year period begins to run from the date of rendition of judgment by the trial court . . . which, in a criminal case, is the date of imposition of the sentence by the trial court" (citation omitted)).

Johnson *v.* Preleski

the petitioner's attorney, faxed the process for the petition to Charles J. Lilley, a state marshal, for service. The fax transmission report indicated that the process was successfully delivered to Lilley's fax machine at 5:01 p.m. that day, along with a cover sheet directing Lilley to serve the process "ASAP."[5] Peat also attempted to call Lilley on August 5 but could not reach him and left him a voice mail message instead. Although Lilley's fax machine received the fax on August 5, Lilley could not recall whether he was at work that day or whether he physically held the process in his hand. He also did not indicate the date he received the process on the return of service. In any event, Lilley served process on the respondent on the next day, August 6, 2014.

On August 28, 2014, the respondent filed a motion to dismiss the petition for a new trial pursuant to Practice Book § 10-30, claiming that the petition is time barred because the petitioner did not serve process on him until one day after the expiration of the three year limitation period. See General Statutes § 52-582 (a). The respondent also filed an answer and special defense in which he again asserted that the petition was barred by the statute of limitations. Specifically, the respondent argued that the transmission of a fax to a marshal does not constitute evidence of personal delivery prior to the expiration of the statute of limitations for purposes of § 52-593a (a), and, without any other proof of personal delivery, such as an endorsement by the marshal, the petition is time barred.

---

[5] As the Appellate Court noted, the trial court admitted into evidence "both a fax cover sheet and a document entitled 'TX Result Report.' Both documents reflected the time '17:01' on August 5, 2014. . . . [T]he message section of the fax cover sheet, which was signed by Peat and dated August 5, 2014, provides in relevant part: 'Please make service of the attached ASAP. Also, please confirm receipt. I will mail the originals.' " (Emphasis omitted.) *Johnson* v. *Preleski*, supra, 174 Conn. App. 288 n.4.

Johnson *v.* Preleski

After an evidentiary hearing, and over the petitioner's objection,[6] the trial court agreed with the respondent and concluded that the petitioner failed to prove that he served process on the respondent prior to the expiration of the statute of limitations. Specifically, the trial court determined that there was no proof of timely delivery of the process to Lilley for purposes of § 52-593a (a) because Lilley did not endorse the date of delivery pursuant to § 52-593a (b), and the petitioner failed to provide legal support for the proposition that a fax constituted personal delivery as a matter of law. The trial court subsequently rendered judgment dismissing the petition for a new trial.[7]

The petitioner appealed from the judgment of the trial court to the Appellate Court. Relying on its decision in *Gianetti* v. *Connecticut Newspapers Publishing Co.*, 136 Conn. App. 67, 44 A.3d 191, cert. denied, 307 Conn. 923, 55 A.3d 567 (2012), the Appellate Court agreed with the trial court's conclusion that the petitioner's transmission of process to Lilley by fax did not constitute personal delivery sufficient to save the petition for a new trial under § 52-593a (a). *Johnson* v. *Preleski*, supra, 174 Conn. App. 295–98. The Appellate Court rea-

_____

[6] The parties agreed that the petition would have been time barred by § 52-582 unless the process was personally delivered to Lilley by August 5, 2014, thus giving the petitioner the benefit of the savings statute, § 52-593a. In arguing that the successful fax transmission on August 5, 2014, constituted personal delivery under § 52-593a, thereby rendering his action timely, the petitioner argued that lower courts have construed the endorsement requirement under § 52-593a (b) as directory rather than mandatory, and that § 52-593a is remedial and should be interpreted liberally for the benefit of plaintiffs like the petitioner.

[7] The Appellate Court, in its description of the case's procedural history, described the hearing before the trial court as "a hearing on the motion to dismiss" rather than a hearing on the respondent's special defenses. *Johnson* v. *Preleski*, supra, 174 Conn. App. 288. Our description of the procedural history in this opinion reflects that the trial court dismissed the petition on the basis of the respondent's special defense rather than on the motion to dismiss, which remains pending.

Johnson *v.* Preleski

soned that the remedial nature of § 52-593a "[did] not require [it] to vitiate clear statutory requirements, thus rendering meaningless the thing to be accomplished by the statute." Id., 297. This certified appeal followed. See footnote 2 of this opinion.

On appeal, the petitioner claims that the Appellate Court improperly upheld the dismissal of his petition on the basis of an "unduly strict interpretation" of § 52-593a (a). He argues that, even without an endorsement from the marshal showing the date of receipt pursuant to § 52-593a (b), the evidence of the successful fax transmission of process to Lilley's fax machine constituted other evidence sufficient as a matter of law to show that the process was personally delivered to a state marshal prior to the expiration of the statute of limitations. The petitioner further contends that treating his successful fax transmission to Lilley as personal delivery is consistent with the policy underlying both statutes of limitations generally and § 52-593a as a savings statute. In response, the respondent argues that sending process by fax is insufficient to comply with the personal delivery requirements of § 52-593a (a). According to the respondent, allowing transmission of a fax without confirmation of receipt from the marshal himself would render the statute's personal delivery requirement meaningless. We disagree with the respondent's strict interpretation of § 52-593a (a) and conclude that evidence of a successful fax transmission of process to a state marshal's fax machine prior to the lapse of the statute of limitations constitutes personal delivery that will afford a plaintiff the benefit of that savings statute.

Whether the trial court properly interpreted § 52-593a (a) in connection with the respondent's statute of limitations special defense presents a question of law over which we exercise plenary review. See, e.g., *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties, LLC*, 312

Johnson *v.* Preleski

Conn. 662, 670, 94 A.3d 622 (2014) (scope of statute
"is an issue of statutory interpretation over which we
exercise plenary review"); *Pasco Common Condomin-
ium Assn., Inc.* v. *Benson,* 192 Conn. App. 479, 489,
218 A.3d 83 (2019) (applying plenary review to trial
court's interpretation of statute of limitations governing
special defense). Thus, whether a successful fax trans-
mission constitutes personal delivery under § 52-593a
(a) presents a question of statutory construction over
which our review is plenary.

"In determining the meaning of a statute, we look
first to the text of the statute and its relationship to
other statutes. General Statutes § 1-2z. If the text of the
statute is not plain and unambiguous, we may consider
extratextual sources of information such as the statute's
legislative history and circumstances surrounding its
enactment, to the legislative policy it was designed to
implement, and to its relationship to existing legislation
and [common-law] principles governing the same gen-
eral subject matter . . . . Our fundamental objective is
to ascertain the legislature's intent." (Citation omitted;
internal quotation marks omitted.) *Chestnut Point
Realty, LLC* v. *East Windsor,* 324 Conn. 528, 533, 153
A.3d 636 (2017).

We must keep in mind that "[§] 52-593a (a) is a reme-
dial provision that allows the salvage of an [action] that
otherwise may be lost due to the passage of time." *Nine
State Street, LLC* v. *Planning & Zoning Commission,*
270 Conn. 42, 55, 850 A.2d 1032 (2004). "[R]emedial
statutes must be afforded a liberal construction in favor
of those whom the legislature intended to benefit
. . . ." (Internal quotation marks omitted.) *Dorry* v.
*Garden,* 313 Conn. 516, 530, 98 A.3d 55 (2014). "Con-
necticut law repeatedly has expressed a policy prefer-
ence to bring about a trial on the merits of a dispute
whenever possible and to secure for the litigant his or
her day in court. . . . [Thus] [o]ur practice does not

Johnson *v.* Preleski

favor the termination of proceedings without a determination of the merits of the controversy whe[n] that can be brought about with due regard to necessary rules of procedure.'' (Citations omitted; internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 769–70, 900 A.2d 1 (2006); see also *Coppola* v. *Coppola*, 243 Conn. 657, 665, 707 A.2d 281 (1998); *Snow* v. *Calise*, 174 Conn. 567, 574, 392 A.2d 440 (1978).

We begin with the language of § 52-593a (a), which provides in relevant part that an action will be saved from an expiring statute of limitations ''if the process to be served is *personally delivered* to a state marshal, constable or other proper officer within such time and the process is served, as provided by law, within thirty days of the delivery.'' (Emphasis added.) We first observe that the plain language of the statute does not preclude the use of a fax machine or any other method to deliver process to the marshal but, rather, is silent about what constitutes the requisite personal delivery. We previously have concluded that § 52-593a (a), ''taken as a whole,'' is ambiguous ''regarding the requirements relating to delivery of process to the marshal.'' *Tayco Corp.* v. *Planning & Zoning Commission*, 294 Conn. 673, 681, 986 A.2d 290 (2010). For example, one reasonable interpretation of the phrase personal delivery could require a physical, in hand transfer of the process documents to the state marshal. The Appellate Court, however, has held that an in person handoff is not required to comply with the savings statute. See *Gianetti* v. *Connecticut Newspapers Publishing Co.*, supra, 136 Conn. App. 73–74 (''[a]lthough delivery by mail is not mentioned in the [savings] statute, such delivery is not precluded'' (internal quotation marks omitted)). We agree with this reasoning and conclude that, for purposes of § 52-593a (a), delivery of the process via fax

Johnson *v.* Preleski

is not excluded as a proper personal delivery method as a matter of law.

Given the ambiguity in the text of the statute, we next consider extratextual sources in determining whether a successful fax transmission constitutes personal delivery under § 52-593a (a). We turn first to the statute's legislative history. The legislature enacted § 52-593a in 1967; Public Acts 1967, No. 890;[8] to assist plaintiffs in preserving their causes of action so long as they deliver the process to the marshal for service prior to the expiration of the applicable statute of limitations. Speaking in support of the bill that became § 52-593a, Representative John W. Boyd stated: "[T]his bill is for the purpose of, in a small way, extending the statute of limitations of causes of action. It does so by providing that, in the event that the complaint or other process, is personally delivered to the officer who will make service within the time limited by law . . . the period will be extended for [fifteen] days for the officer to make such service." 12 H.R. Proc., Pt. 7, 1967 Sess., p. 2798. Senator John F. Pickett described the savings statute as intended to remedy "[t]he problem [of] when a statute of limitation[s] is about to expire and the sheriff get[s] a copy of the [process] from [counsel]" by allowing the sheriff to serve it within the extra time allotted "if necessary."[9] 12 S. Proc., Pt. 5, 1967 Sess., p.

---

[8] Number 890 of the 1967 Public Acts provides: "No cause or right of action shall be lost because of the passage of the time limited by law within which such action may be brought, if the process to be served is personally delivered to an officer authorized to serve such process or is personally delivered to the office of any sheriff within the time limited by law, and such process is served, as provided by law, within fifteen days of such delivery. In any such case the officer making such service shall endorse under oath on his return the date of delivery of such process to him for service in accordance with this act."

[9] This court has described § 52-593a as "intended to prevent a party from losing the right to a cause of action because of untimely service on the part of the *marshal* by giving the marshal additional time in which to effect proper service on the party in question." (Emphasis in original.) *Tayco Corp.* v. *Planning & Zoning Commission*, supra, 294 Conn. 682; see also *Mario*

Johnson *v.* Preleski

2117. In 2003, the legislature amended the savings statute to afford marshals thirty days, rather than the original fifteen, to serve the process after receipt. Public Acts 2003, No. 03-224, § 14. The president of the Connecticut State Marshal's Association, Inc., Robert S. Miller, submitted written testimony to the Judiciary Committee in support of this amendment, suggesting that the extension of time for service to thirty days was intended to "lessen the intense pressure on the [m]arshal to get it served on time and [to] save the suit from being dismissed." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 2003 Sess., p. 1964; see, e.g., *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 314, 819 A.2d 260 (2003) ("[I]t is now well settled that testimony before legislative committees may be considered in determining the particular problem or issue that the legislature sought to address by the legislation. . . . This is because legislation is a purposive act . . . and, therefore, identifying the particular problem that the legislature sought to resolve helps to identify the purpose or purposes for which the legislature used the language in question." (Internal quotation marks omitted.)).

In light of this legislative history, allowing the petitioner in the present case to satisfy the personal delivery requirement via successfully faxing process to the state marshal for service is consistent with the statute's remedial purpose, especially given the imminently expiring statute of limitations for his petition for a new trial. "Section 52-593a (a) . . . represents a balance between two public policies enunciated by both the legislature and this court regarding statutes of limitation[s] and requirements for service of process. Statutes

v. *Conservation Commission*, 33 Conn. Supp. 172, 173, 367 A.2d 698 (1976) ("In 1967, the legislature recognized the injustice that might result if a sheriff, through inattention, oversight or lack of time, failed to serve papers [on] time. It gave the sheriff a grace period of fifteen additional days.").

Johnson *v.* Preleski

of limitation[s] implement the public policy of limiting
the legal consequences of a wrong to a reasonable time
after an event occurs. . . . Proper service of process,
in comparison, promotes the public policy of ensuring
actual notice to defendants.'' (Citations omitted.) *Tayco
Corp.* v. *Planning & Zoning Commission*, supra, 294
Conn. 684–85. Put differently, permitting the petitioner
to deliver process by fax on the last day of the limitation
period does not impermissibly grant him extra time
with which to prepare his action.[10] See id., 686 (''§ 52-
593a (a) does not give the *litigant* time beyond the
statute of limitations in which to deliver process to the
marshal for service'' (emphasis in original)).

Allowing a plaintiff to fax process to a marshal for
service is consistent with other Connecticut courts' pre-

---

[10] The dissent argues that, because the text of the statute as originally
enacted included the word ''office,'' which the legislature subsequently
removed in 2000 in No. 00-99, §§ 116 and 138, of the 2000 Public Acts, the
legislature could not have intended ''for delivery to the marshal's place of
business to constitute personal delivery . . . .'' We disagree. The legisla-
ture's removal of the word ''office'' in conjunction with the word ''sheriff''
was not intended to govern the means and method of delivery but, instead,
implemented a then proposed constitutional amendment eliminating the
office of the High Sheriff in Connecticut, which resulted in the creation of
the state marshal system and changed, inter alia, the entity responsible for
process serving in Connecticut. Senator Donald E. Williams, Jr., explained
the bill's purpose: ''[W]e have before us today the bill which would delve
into the substance of reforming the current sheriff system. . . . [I]f the
voters agree that the office of the High Sheriff is to be abolished and deleted
from the state constitution, at that time this bill will take effect.'' 43 S. Proc.,
Pt. 5, 2000 Sess., pp. 1598–99. In creating the state marshal system and
implementing the constitutional amendment, this bill necessarily eliminated
the ''office'' of the High Sheriff as a physical and governmental entity where
court papers could be delivered for service by sheriffs or deputy sheriffs.
See Legislative Program Review and Investigations Committee, Connecticut
General Assembly, Connecticut Sheriffs System (February, 2000) pp. 3–4,
43 (describing duties of sheriffs and deputy sheriffs as process servers).
Put differently, this change to the statute speaks more to the implementation
of the constitutional amendment than to the permissible method of delivery.

We also note that the dissent agrees that § 52-593a functions as a remedial
statute but construes the legislative history as evincing a desire to benefit
marshals rather than plaintiffs. We disagree. Affording the marshal extra
time to serve the process allows a plaintiff to preserve his cause of action

Johnson *v.* Preleski

vious interpretations of the phrase "personally delivered" in § 52-593a (a).[11] We find particularly instructive the Appellate Court's decision in *Gianetti* v. *Connecticut Newspapers Publishing Co.*, supra, 136 Conn. App. 67. In *Gianetti*, the Appellate Court held that, although the plaintiff mailed the process to the marshal before the statute of limitations expired, this mailing was not sufficient to demonstrate that the marshal had received it before the statute of limitations had terminated. Id., 73–74. The Appellate Court emphasized that, although mailing is an acceptable form of delivery, "the determinative standard is *when the marshal receives the process*, not when it is mailed." (Emphasis added.) Id.,

and, accordingly, benefits the plaintiff, not the marshal. As such, the statute should be liberally construed in the plaintiff's favor.

[11] This construction of "personally delivered" under § 52-593 (a) is not inconsistent with this court's decision in *Hatt* v. *Burlington Coat Factory*, supra, 263 Conn. 279, in which we concluded that faxing a decision of the Workers' Compensation Commissioner to a party's attorney did not comply with the statute requiring notice in workers' compensation proceedings to be given by "written or printed notice, *service personally or by registered or certified mail*" for purposes of triggering the statutory appeal period. (Emphasis in original; internal quotation marks omitted.) Id., 294–95; see also General Statutes § 31-321. The statutory language at issue in the present case is distinguishable from that in *Hatt* because § 31-321 uses the term "service personally" rather than "personally [deliver]" as in § 52-593a (a). But cf. *Hatt* v. *Burlington Coat Factory*, supra, 295 (noting that "the language of § 31-321 indicates that the legislature considered only personal delivery and registered or certified letters as acceptable methods of service"). In contrast to *Hatt*, this case does not concern the methods by which the marshal must ultimately *serve* the process received. See footnote 17 of this opinion. Moreover, *Hatt* is factually distinguishable because it strictly construed the commissioner's procedural obligations under § 31-321 in order to preserve a party's "time-sensitive" statutory right to appeal. *Hatt* v. *Burlington Coat Factory*, supra, 294–95. In contrast, this case involves § 52-593a, which is a remedial statute that we are asked to construe liberally in order to protect the timeliness of the plaintiff's cause of action. See id., 296–97 (distinguishing case from Compensation Review Board decision holding that, "despite the dictates of § 31-321, a party could *protect* its right to appeal by faxing a copy of its petition to the board on the [final] day, while mailing the original and required copies for arrival on the following day" (emphasis in original)). Accordingly, *Hatt* does not control our resolution of this case.

Johnson *v.* Preleski

73. According to the Appellate Court in *Gianetti*, "the plaintiff must get the process to the serving officer within the period allowed by the statute" in order to satisfy the delivery requirement.[12] Id.

The circumstances surrounding delivery in *Gianetti* are distinguishable from the present case. Delivery by fax is more akin to in hand delivery than the first class mail at issue in *Gianetti* because the time, date, and success of a fax transmission are confirmed near instantaneously, whereas delivery by mail necessarily takes more time, and the date of delivery is not necessarily certain.[13] In contrast to first class mail, faxing the process to a marshal's fax machine provides confirmation of whether it was received, along with the date and time of receipt.[14] The inherent reliability of the delivery

---

[12] In *Gianetti*, the Appellate Court further concluded that the plaintiff did not comply with the statute's delivery requirements because the marshal failed to endorse the date of delivery on the return pursuant to § 52-593a (b). "The marshal's return is silent as to when it was received from the plaintiff, and, thus, does not comply with the provisions of § 52-593a (b). Although we take no position on whether an amended return or affidavit of the marshal would have had a curative effect, the plaintiff failed to submit such an amended return or affidavit confirming receipt prior to June 20, 2006. A plaintiff relying upon a 'saving statute' must demonstrate compliance with its provisions. See *Vessichio* v. *Hollenbeck*, 18 Conn. App. 515, 519, 558 A.2d 686 (1989). Because the plaintiff failed to establish a genuine issue of material fact as to his compliance with the provisions of § 52-593a, the court properly rendered summary judgment as to count one of the complaint . . . ." (Footnote omitted.) *Gianetti* v. *Connecticut Newspapers Publishing Co.*, supra, 136 Conn. App. 74. We note that the Appellate Court's strict interpretation of § 52-593a (b) in *Gianetti* appears inconsistent with our subsequent conclusion in *Doe* v. *West Hartford*, 328 Conn. 172, 186–87, 177 A.3d 1128 (2018), that the endorsement provision is directory rather than mandatory.

[13] Mail or parcel delivery methods that provide confirmation of delivery upon receipt might well be more akin to a fax than the first class mail in *Gianetti*, which did not provide any evidence of when the marshal received the process. See *Gianetti* v. *Connecticut Newspapers Publishing Co.*, supra, 136 Conn. App. 74 ("the plaintiff failed to submit . . . an amended return or affidavit confirming receipt prior to [the end of the limitation period]").

[14] We note that there is no challenge to the accuracy of the date and time of the fax transmission.

Johnson *v.* Preleski

confirmation provided by the fax machine avoids the problem with mail delivery identified in *Gianetti*, in which the Appellate Court observed that, "where a delivery of process is to be made by mail, it has not been personally delivered until it has been received in person by the serving officer, at which point he can so attest."[15] (Internal quotation marks omitted.) Id., 74.

A more flexible interpretation of § 52-593a (a) that permits personal delivery by successful fax transmission also is consistent with the analysis of § 52-593a

_____

[15] One of the dissent's criticisms of delivery via fax is that a marshal is unable to confirm that the copy served is a "true and attested copy"; General Statutes § 52-57 (a); of the original because the marshal does not have the original. See footnote 5 and accompanying text of the dissenting opinion. The Appellate Court ordered supplemental briefing on this specific issue: "Is personal delivery of the *original* writ, summons and petition, as opposed to a *copy, facsimile, or electronic copy*, required by . . . § 52-593a?" (Emphasis in original; internal quotation marks omitted.) *Johnson* v. *Preleski*, supra, 174 Conn. App. 292 n.7. The Appellate Court did not decide this question. Id., 293 n.7. In his brief to this court, the respondent claims that this question "is effectively moot" in the absence of any evidence that Lilley actually received the process on August 5.

We too decline to reach this issue because it has not been distinctly raised by either party and the Appellate Court declined to reach it in its review. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 164, 84 A.3d 840 (2014) ("our system is an adversarial one in which the burden ordinarily is on the parties to frame the issues, and the presumption is that issues not raised by the parties are deemed waived"). We note, however, that, although there was no challenge to the authenticity of the process delivered in this case, nothing in the statute precludes delivery of a copy to the marshal. As we previously indicated, delivery via fax does not permit a plaintiff extra time beyond the statute of limitations. Instead, a fax produces an exact duplicate of the process transmitted to the marshal. After the marshal receives the fax, a plaintiff still has time, under the statute, to produce the original so that the marshal can attest to its accuracy.

Also, the record in this case does not mandate the inference that Lilley did not have access to the original when he served the process, as he indicated in his return that he served "a verified true and attested copy of the *original* [w]rit, [s]ummons and [p]etition [f]or [a] [n]ew [t]rial . . . ." (Emphasis added.) Moreover, a day passed between receipt of the fax and actual service. Finally, the respondent did not challenge the service of process, apart from the timeliness of the delivery to the marshal.

Johnson *v.* Preleski

(b) in our recent decision in *Doe* v. *West Hartford*, 328 Conn. 172, 177 A.3d 1128 (2018). In *Doe*, we concluded that the endorsement provision of § 52-593a (b), which affords plaintiffs a convenient method to ensure that "the timeliness of delivery [to the marshal] may be ascertained," is directory rather than mandatory. Id., 186–87. We observed that, because endorsement by the marshal is not required, the statute leaves room to allow other modes of communication to satisfy the delivery requirement. "[P]ermitting a plaintiff to prove timely delivery of process to a marshal by means other than the statutorily directed endorsement would not result in an unjust windfall but, rather, *assuming that timeliness could be shown by other evidence*, simply would enable the plaintiff to take advantage of a protection that the legislature sought to provide to him, at no expense to the opposing party."[16] (Emphasis added.) Id., 186. Thus, under *Doe*, plaintiffs may prove delivery of process to the marshal by other methods beyond the endorsement prescribed by § 52-593a (b).[17] If endorsement of the date

[16] We emphasize that our conclusion that the successful fax transmission of process to the marshal constitutes personal delivery under § 52-593a (a) does not affect the marshal's subsequent obligation to serve the process on the respondent in the manner prescribed by statute. See *Tayco Corp.* v. *Planning & Zoning Commission*, supra, 294 Conn. 685–86 (discussing due process implications of "[p]roper service of process, [which] promotes the public policy of ensuring actual notice to defendants"); *Smith* v. *Smith*, 150 Conn. 15, 20, 183 A.2d 848 (1962) (explaining that, to confer personal jurisdiction on court, process is served either through "manual delivery or by leaving it at [the defendant's] usual place of abode"); see also General Statutes §§ 52-54 and 52-57.

[17] The dissent asserts that interpreting the statute to permit delivery to a marshal by fax will open the door to a parade of horribles including, inter alia, service of "a protective order by WhatsApp . . . ." We disagree. Our opinion is limited to the discrete and unique issue of personal delivery under § 52-593a and the particular method of delivery by fax transmission; we do not intend to pass on or approve of the methods for service of process described by the dissent. We emphasize that service of process in any circumstance must comport with the due process clause's actual notice requirements. "Proper service of process . . . promotes the public policy of ensuring actual notice to defendants. . . . [It] gives a court power to render a judgment which will satisfy due process under the [fourteenth]

Johnson *v.* Preleski

of delivery is not mandatory, it follows that plaintiffs should not be penalized if, in the absence of an endorsement, they can prove delivery by other evidence. See id., 190–92 (summary judgment was improper because testimony of plaintiff's counsel provided circumstantial evidence of timely delivery).

Accordingly, we agree with the petitioner that he has satisfied the requirement of timely personal delivery under § 52-593a (a) by providing sufficient, circumstantial evidence of receipt of the process by the marshal. Specifically, Peat testified that she sent the process to the marshal on the last day prior to the lapse of the statute of limitations. She sent the fax at 4:59 p.m., and it was received two minutes later by the marshal's fax machine. The petitioner introduced into evidence both the fax cover sheet from his attorney's office and the transmission report demonstrating successful delivery to Lilley's office on August 5, 2014. See footnote 5 of this opinion. Because the fax transmission was in the marshal's office, it was, in essence, delivered into his constructive possession. See Black's Law Dictionary (11th Ed. 2019) p. 1408 (defining "constructive possession" as "[c]ontrol or dominion over a property without

amendment of the federal constitution . . . ." (Citation omitted; internal quotation marks omitted.) *Tayco Corp.* v. *Planning & Zoning Commission*, supra, 294 Conn. 685. Delivery to a marshal, however, does not raise similar concerns because a marshal serves only as a mechanism to effectuate service; the marshal is not a party to the case. See *Zarillo* v. *Peck*, 33 Conn. Supp. 676, 678, 366 A.2d 1165 ("Section 52-593a, unlike General Statutes § 52-54, the service-of-summons statute, does not spell out how delivery shall be made. The latter statute, for example, prescribes that service shall be made by reading the summons and complaint in the hearing of the defendant or by leaving an attested copy with him or at his usual place of abode. The purpose of prescribing those modes of service is to ensure actual notice to the defendant. . . . All that § 52-593a requires, on the other hand, is that the process be personally delivered." (Citations omitted.)), cert. denied, 171 Conn. 731, 357 A.2d 515 (1976). If a marshal does not receive notice, he could not, ipso facto, serve the process in a manner compliant with due process, and a plaintiff's case will not proceed. Accordingly, we disagree that our decision will revolutionize service of process in our state.

Johnson *v.* Preleski

actual possession or custody of it''). The petitioner elicited further circumstantial evidence of timely delivery in that Lilley served the respondent the following day, as directed by the petitioner's attorney, thereby giving the respondent notice of the action well within the time period allowed by § 52-593a. As the Appellate Court concluded in *Gianetti* v. *Connecticut Newspapers Publishing Co.*, supra, 136 Conn. App. 73, possession of process by the marshal is all that is necessary to establish compliance with the statute. The manner in which the process is delivered to the marshal is not relevant, as long as the petitioner has shown that he has delivered the process within the prescribed limitation period. The petitioner, therefore, has sufficiently demonstrated that the marshal received personal delivery of the process in compliance with the savings statute.[18]

The respondent argues, however, that the petitioner's inability to prove that anyone actually was present in the marshal's office at the time of receipt defeats the petitioner's claim. We disagree. This argument is inconsistent with our recent decision in *Doe* v. *West Hartford*, supra, 328 Conn. 172, in which we inferred the marshal's timely possession of process on the basis of circumstantial evidence.[19] In *Doe*, the marshal neither endorsed the return of service nor testified to the date he received

[18] Although not cited by the parties, our independent research revealed a recent decision by the Supreme Court of Minnesota that held that a fax transmission does not constitute personal delivery. *Cox* v. *Mid-Minnesota Mutual Ins. Co.*, 909 N.W.2d 540, 546 (Minn. 2018). We respectfully disagree with the conclusion of our sister state's high court. As noted by the dissent in that case, the majority conflates '' 'service' '' of process on defendants with '' 'delivery' '' of the process to a sheriff (or state marshal). Id., 549–50 (Anderson, J., dissenting). The majority's holding in *Cox* is inconsistent with the remedial nature of Connecticut's statute, and, therefore, we are not persuaded by its reasoning.

[19] We note that our decision in *Doe* was released after the Appellate Court decided the present case, and, as a result, the Appellate Court lacked the benefit of our analysis in *Doe*. See *Johnson* v. *Preleski*, supra, 174 Conn. App. 285.

Johnson *v.* Preleski

the process. Id., 177–78. Instead, the court relied on an affidavit and deposition testimony from the plaintiff's attorney, in which he averred that the marshal had received the summons and complaint prior to the expiration of the statute of limitations and that his office staff and the marshal himself had confirmed to him that the marshal had retrieved the process within the limitation period. Id., 178, 188–89. We held that this affidavit and deposition testimony, among other facts, such as the attorney's leaving the process on the counter near his office manager's desk for retrieval by the marshal in accordance with his office's usual procedure, and the fact that the process was no longer on the counter later that day, was sufficient, circumstantial evidence to defeat a motion for summary judgment. Id., 188–89, 194–95.

In the present case, as in *Doe*, circumstantial evidence establishes timely possession by the marshal. Although the facts in *Doe* showed receipt by the marshal himself, there is sufficient proof presented here to infer receipt by the marshal's office. As we have discussed, successful delivery into the actual or constructive possession of the marshal (whether to the marshal's agent or his office) is sufficient to meet the statute's requirements. The lack of direct evidence as to when the process was physically in Lilley's hands does not render the delivery of the process untimely for lack of evidence of personal delivery, especially given the circumstantial evidence supporting the inference that Lilley's office received it on time, namely, the time and date stamps on the fax cover sheet and the transmission report; see footnote 5 of this opinion; and the fact that he served the process on the respondent the very next day. We therefore disagree with the trial court's determination, upheld by the Appellate Court, that there was an ''absence of any evidence that the marshal received the process on the date it was faxed . . . .'' (Internal quotation marks

Johnson *v.* Preleski

omitted.) *Johnson* v. *Preleski*, supra, 174 Conn. App. 291–92. Accordingly, the Appellate Court incorrectly concluded that § 52-593a did not save the petition from dismissal as time barred.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for further proceedings according to law.

In this opinion PALMER, D'AURIA and ECKER, Js., concurred.

McDONALD, J., with whom MULLINS and KAHN, Js., join, dissenting. The majority's conclusion that legal process is "personally delivered" to a recipient when a sender transmits a copy of that process from a remote location via facsimile (fax) transmission to the recipient's place of business cannot be squared with the well established, and widely accepted, meaning of this phrase. Whether legal process may be delivered through such means, without evidence that it actually has been received by the recipient, has profound ramifications given the wide range of electronic forms of communication and delivery platforms that exist today. To be clear, the rationale utilized by the majority will apply not only to the transmittal of a petition for a new trial by fax machine—an increasingly obsolete technology—but would apply with equal force to the transmittal of (1) a complaint by text message, (2) a subpoena by a LinkedIn account, (3) a temporary restraining order by Facebook instant messenger, (4) an injunction by Twitter, (5) a protective order by WhatsApp, or (6) a property execution by e-mail.

Whether to bridge the digital divide between the operations of our court system and modern technological advancements in this area, and what limits might be

Johnson *v.* Preleski

necessary to protect the parties' interests, are undoubtedly matters for the legislature to address, not this court. Indeed, when the legislature has chosen to embrace alternative means for the delivery of legal process, it has demonstrated its ability to craft legislation that accomplishes that objective. Because I conclude that legislatively mandated "personal delivery" requires that the recipient be in actual possession of the legal process and because the petitioner failed to establish that the marshal was in actual possession of the process before the lapse of the statute of limitations, I respectfully dissent.

The following undisputed facts are relevant to the resolution of this appeal. The petitioner, Anthony Johnson, sought to file a petition for a new trial pursuant to General Statutes § 52-270 on the basis of newly discovered evidence. Donna Peat, the office manager for the petitioner's attorney, faxed the process for the petition for a new trial to Charles J. Lilley, a state marshal, for service at 4:59 p.m. on August 5, 2014.[1] The fax transmission report indicates that the fax was electronically received by the fax machine in Lilley's office on August 5 at 5:01 p.m.[2] The evidence also establishes that

_____

[1] The transmittal cover page was addressed to "Debbie," not Lilley, and contained the following message: "Please make service of the attached ASAP. Also, please confirm receipt. *I will mail the originals*. Thank you. Donna." (Emphasis altered.) There is no indication in the record that either "Debbie" or Lilley ever confirmed the receipt of the transmission, that the original process was mailed, or that Lilley received the original process before he served the faxed copy of the process the next day. I observe that the fax cover page stated that the originals would be mailed and that the fax was transmitted at 4:59 p.m. Under such circumstances, it is inconceivable that Lilley received the original documents in time to serve them the following day. As such, the petitioner's attorney could not have provided Lilley, on a timely basis, with all the materials he needed to certify proper service.

[2] Although I do not agree with the majority that receipt at the recipient's office constitutes constructive possession and, in turn, personal delivery, such a theory would have to fail in the present case, in any event, in the absence of evidence that the marshal's ordinary business hours extended past 5 p.m. Though it is not controlling in this context, it is nevertheless

335 Conn. 138 JULY, 2020 159

Johnson *v.* Preleski

Lilley did not answer Peat's telephone call on August 5, and he had no recollection of whether he was in his office that day. Moreover, there is no evidence that Lilley responded on August 5 to Peat's voice mail. Lilley served the faxed copy of the process on August 6. In sum, there is no evidence establishing that Lilley personally received the faxed process the day it was transmitted, and the majority does not claim otherwise. There is also no evidence of when Lilley received the original process, which the fax transmittal cover page indicated would be mailed.

I begin by noting my agreement with the applicable standard of review as set forth in the majority opinion. The text of General Statutes § 52-593a (a) provides that a cause of action will not be barred by an expiring statute of limitations "if the process to be served is *personally delivered* to a state marshal, constable or other proper officer within such time and the process is served, as provided by law, within thirty days of the delivery." (Emphasis added.) I agree with the majority's conclusion that § 52-593a (a) is ambiguous and, in accordance with General Statutes § 1-2z,[3] that extratextual sources may be considered in ascertaining the meaning of "personal delivery." See, e.g., *State* v. *Panek*, 328 Conn. 219, 238, 177 A.3d 1113 (2018). I disagree with the majority's conclusion, however, that the mere

informative that we regularly consider something delivered electronically after 5 p.m. as not delivered on that day. Indeed, our rules of practice provide that any filing sent electronically to the clerk's office that is received after 5 p.m. "shall be deemed filed on the next business day upon which such office is open." Practice Book § 7-17; see also *Real Estate Mortgage Network, Inc.* v. *Squillante*, 184 Conn. App. 356, 362, 194 A.3d 1262, cert. denied, 330 Conn. 950, 197 A.3d 390 (2018).

[3] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

Johnson *v.* Preleski

successful transmission of a fax satisfies the "personally delivered" requirement of § 52-593a.

I find the Appellate Court's decision in *Gianetti* v. *Connecticut Newspapers Publishing Co.*, 136 Conn. App. 67, 73, 44 A.3d 191, cert. denied, 307 Conn. 923, 55 A.3d 567 (2012), particularly helpful in ascertaining the meaning of " 'personal delivery.' " In analyzing § 52-593a, the Appellate Court explained that, "[a]lthough the plaintiff is permitted to mail the process to the marshal, the determinative standard is *when the marshal receives the process*, not when it is mailed." (Emphasis added.) Id. Specifically, the court explained that something is not "personally delivered" until it has been "received in person by" or has "come into the possession of" the receiving officer. Id., 74; see also *Zarillo* v. *Peck*, 33 Conn. Supp. 676, 679, 366 A.2d 1165 ("The use of the word 'personally' in [§ 52-593a (a)] makes it crystal clear that the process must be *received* by the officer within the limitations period . . . . [P]rocess which *came into the hands* of the deputy sheriff by mail was 'personally delivered' to him within the meaning of § 52-593a . . . ." (Emphasis added.)), cert. denied, 171 Conn. 731, 357 A.2d 515 (1976). Accordingly, in order to satisfy the "personal delivery" requirement of § 52-593a, the petitioner must establish that the marshal actually received the process in person prior to the expiration of the statute of limitations.[4]

The Appellate Court's reasoning is consistent with other statutes addressing service, which distinguish personal service from abode service.[5] General Statutes

---

[4] This reasoning is consistent with the legislative history of § 52-593a. See 12 S. Proc., Pt. 5, 1967 Sess., p. 2117, remarks of Senator John F. Pickett (savings statute is intended to remedy issue of when "a statute of limitation[s] is about to expire and the *sheriff get*[*s*] *a copy* of the writ from [counsel]" by allowing sheriff to serve it within extra time allotted (emphasis added)).

[5] In ascertaining the meaning of "personally delivered," I discern no principled distinction between the concepts of "personal delivery" and "personal service," or variations of those terms, such as "service personally." Perhaps more important, the majority does not offer a meaningful distinction, thereby

335 Conn. 138 JULY, 2020 161

Johnson *v.* Preleski

§ 52-57 governs the manner of service of process in
Connecticut and provides that "process in any civil
action shall be served by *leaving a true and attested
copy of it . . . with the defendant,* or at his usual place
of abode, in this state." (Emphasis added.) General Stat-
utes § 52-57 (a); see also General Statutes § 52-54 ("[t]he
service of a writ of summons shall be made by . . .
leaving an attested copy thereof with [the defendant]
or at his usual place of abode"). Leaving a copy of

---

leaving our trial courts to conjure one for themselves. Though the majority
states that its holding is limited to the "discrete and unique issue" here, one
is left to speculate why the issue is either discrete or unique.

Service is merely the formal delivery of legal process or notice. See Black's
Law Dictionary (11th Ed. 2019) p. 1643 (service is "[t]he formal delivery of
a writ, summons, or other legal process, pleading or notice to a litigant or
other party interested in litigation"). The majority is correct that service of
process must comport with due process but properly served process requires
that the marshal certify that the document he or she is serving is a true and
attested copy of the original process. See General Statutes §§ 52-54 and 52-
57. This can only be accomplished if the marshal has the original process
in hand. The personal delivery requirement of § 52-593a ensures that the
marshal receives the original process. The majority does not address the
fact that the marshal did not have the original process but, rather, had a
replica of the original. The majority attempts to distinguish "service" from
"delivery" on the due process principle of "actual notice," but does not
explain how one who receives a fax, e-mail or text message containing a
copy of the original process has "actual notice" of its contents. Additionally,
the majority tries to divine some light between "personally served" and
"personally delivered" by asserting that delivery to a marshal only serves
as a "mechanism to effectuate service . . . ." But how is that legally or
meaningfully different than the due process concern that one have "actual
notice" of the original process? The majority opinion is silent on the question.

I look to related statutes, such as service of process statutes, because
"[s]tatutes are to be interpreted with regard to other relevant statutes
because the legislature is presumed to have created a consistent body of
law." (Internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1,
77–78, 836 A.2d 224 (2003); see also *Cox* v. *Mid-Minnesota Mutual Ins. Co.*,
909 N.W.2d 540, 545–46 (Minn. 2018) (concluding that fax transmission did
not satisfy requirement of delivery to sheriff because, among other things,
state's service of process rule of civil procedure did not allow for service
via fax). It is the meaning of the adverb "personally," not the verbs "deliver"
or "service," that is at issue in the present case and, as discussed further
in this dissenting opinion, to satisfy a personal delivery requirement, the
recipient must be in actual possession of the original legal process.

Johnson *v.* Preleski

the original process with the defendant is commonly referred to as personal service. See *Jimenez* v. *DeRosa*, 109 Conn. App. 332, 339, 951 A.2d 632 (2008) ("[w]hen jurisdiction is based on *personal* or abode service, the matters stated in the return, if true, confer jurisdiction" (emphasis added; internal quotation marks omitted)). It is significant that, in Connecticut, personal service has been interpreted to mean hand delivery. See, e.g., *Black* v. *London & Egazarian Associates, Inc.*, 30 Conn. App. 295, 300, 620 A.2d 176, cert. denied, 225 Conn. 916, 623 A.2d 1024 (1993); see also *Weiss* v. *Glemp*, 127 Wn. 2d 726, 729–30, 903 P.2d 455 (1995) (en banc) (summons left on windowsill of rectory, four feet from defendant, did not comply with personal service requirements). This is consistent with the dictionary definition of "personal service." See Black's Law Dictionary (11th Ed. 2019) p. 1381 (defining "personal service" as "[a]ctual delivery of the notice or process to the person to whom it is directed"); see also American Heritage College Dictionary (4th Ed. 2007) p. 1039 (defining "personal" as "[d]one, made, or performed *in person*" (emphasis added)).

These service of process statutes also require that the marshal leave a true and attested copy of the original process with the defendant. See General Statutes §§ 52-54 and 52-57. The theoretical underpinning of service is that the marshal compares the original process to the copy that he is serving, thus certifying that it is a true and attested copy. See *City Lumber Co. of Bridgeport, Inc.* v. *Borsuk*, 131 Conn. 640, 646, 41 A.2d 775 (1945) ("To attest means 'to bear witness to . . . to affirm to be true or genuine.' *McGuire* v. *Church*, 49 Conn. 248, 249 [1881]."). Although it is not necessary for a "true and attested copy" of an original court document to be a "duplicate copy, i.e., a copy exact in every respect to the original," nonconformities of the copy compared to the original may be deemed inadequate

Johnson *v.* Preleski

service. *Crossroads Development, Inc.* v. *Planning & Zoning Commission*, 210 Conn. 1, 5, 553 A.2d 609 (1989). As such, the marshal must be able to compare the copy that he is serving to the original, which, in this case, was not even being mailed to the marshal until sometime after August 5. Permitting personal delivery to a marshal to be accomplished via fax does not afford the marshal the ability to certify that the document he is serving is a true and attested copy of the original because the document received via fax is itself a copy. See, e.g., *Cox* v. *Mid-Minnesota Mutual Ins. Co.*, 909 N.W.2d 540, 544 (Minn. 2018) (A "fax is '[a] method of transmitting over telephone lines an exact *copy* of a printing.' Fax, Black's Law Dictionary [(10th Ed. 2014) p.726] . . . . *The actual document being faxed is not brought to a particular person or place*." (Citation omitted; emphasis added.)).

The Appellate Court's reasoning in *Gianetti* is also consistent with case law from this court in which we held that a fax did not satisfy the personal delivery requirement of General Statutes § 31-321. See *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 291, 298, 819 A.2d 260 (2003). Specifically, we concluded that by faxing its decision to a party's attorney, the Workers' Compensation Commission did not comply with § 31-321, which requires notice to be given by "written or printed notice, *service personally* or by registered or certified mail . . . ." (Emphasis added.) See *Hatt* v. *Burlington Coat Factory*, supra, 291, 298. The majority's attempt to distinguish *Hatt* from the present case on the basis that § 31-321 uses the phrase "service personally," rather than "personally delivered" as in § 52-593a, is unpersuasive and is undermined by the fact that we used the terms "service personally" and "personal delivery" interchangeably and synonymously. See footnote 5 of this dissenting opinion. We explained in *Hatt* that the "language of § 31-321 indicates that the legislature

Johnson *v.* Preleski

considered only *personal delivery* and registered or
certified letters as acceptable methods of *service*.''
(Emphasis added.) *Hatt* v. *Burlington Coat Factory,*
supra, 295.

The trial court and courts from other jurisdictions
have considered similar language and specifically
rejected the argument that a fax transmission consti-
tutes delivery. See, e.g., *Seibold* v. *Commissioner of
Dept. of Motor Vehicles,* Superior Court, judicial district
of New Britain, Docket No. CV-13-6019840-S (January
9, 2014) (faxing copy of administrative appeal did not
satisfy either personal service or certified mail require-
ment of General Statutes § 4-183 (c) (1)); *Cox* v. *Mid-
Minnesota Mutual Ins. Co.,* supra, 909 N.W.2d 546
(''personal delivery'' is not satisfied by delivery via fax);
*National Bank of Northern New York* v. *Grasso,* 79 App.
Div. 2d 871, 871, 434 N.Y.S.2d 553 (1980) (''[p]ersonal
delivery means 'in-hand delivery' ''); see also *Firefight-
ers Institute for Racial Equality* v. *St. Louis,* 220 F.3d
898, 903 (8th Cir. 2000) (transmitting subpoena by fax
is insufficient to satisfy rule 45 (b) (1) of Federal Rules
of Civil Procedure, which requires that service be made
by ''delivering'' subpoena to person, because method
of service needs to be one that ensures that subpoena
was ''placed in the actual possession or control of the
person to be served''), cert. denied, 532 U.S. 921, 121 S.
Ct. 1359, 149 L. Ed. 2d 288 (2001); *Mehrer* v. *Diagnostic
Imaging Center, P.C.,* 157 S.W.3d 315, 321 (Mo. App.
2005) (transmitting subpoena via fax to nonparty was
insufficient to constitute '' 'delivery' '' under state's
rules of civil procedure); 62B Am. Jur. 2d 760, Process
§ 187 (2005) (''The term 'personal service' has been
defined as the actual or direct delivery of a summons
or a copy thereof to the person to whom it is directed
. . . . *The term does not include service by leaving a
copy of the papers at the place of residence or abode*

Johnson *v.* Preleski

*of the defendant, nor does it include service by mail.''* (Emphasis added; footnotes omitted.)).

Moreover, courts recognize the significance of a legislative body's inclusion and exclusion of ''personal delivery'' language from a statute. For example, the Nevada Supreme Court concluded that a fax was adequate service in a case in which the relevant statute did not require personal service and, also, service via fax was statutorily permitted. See *Davis* v. *District Court*, 129 Nev. 116, 119–20, 294 P.3d 415 (2013). The court explained that, ''[i]n legal usage, 'personal service' has a distinct meaning—'[a]ctual delivery of the notice or process to the person to whom it is directed.' Black's Law Dictionary [(7th Ed. Abridged 2000) p. 933].'' *Davis* v. *District Court*, supra, 119. Significantly, the court acknowledged that, ''[h]ad the [l]egislature intended to require personal service, it could have expressly done so as it has in other statutes,'' and, therefore, the court declined to engraft a ''personal delivery'' requirement onto the statute. Id.

In the absence of a definition for ''personal delivery,'' the legislature directs us to apply the ''commonly approved usage'' of the words at issue, or, if they are technical words that have ''acquired a peculiar and appropriate meaning in the law,'' they should be construed according to that technical meaning. General Statutes § 1-1 (a). Irrespective of whether we view ''personal delivery'' as having a common or technical meaning, the result is the same. It requires actual receipt by the recipient, not delivery to the recipient's place of business.[6]

---

[6] Indeed, the legislature enacted § 52-593a as Public Acts 1967, No. 890, and the public act allowed for personal delivery to ''an officer authorized to serve such process or . . . to *the office of* any sheriff . . . .'' (Emphasis added.) The emphasized phrase, ''the office of,'' was subsequently removed from the statute by the legislature. See Public Acts 2000, No. 00-99, §§ 116 and 138. As a result, had the legislature intended for delivery to the marshal's place of business to constitute personal delivery, it certainly would not have removed that language from the statute. See *Marchesi* v. *Board of Selectmen*,

Johnson *v.* Preleski

I agree with the majority that § 52-593a is a remedial statute; see, e.g., *Nine State Street, LLC* v. *Planning & Zoning Commission*, 270 Conn. 42, 55, 850 A.2d 1032 (2004); and that remedial statutes "must be afforded a liberal construction in favor of those whom the legislature intended to benefit . . . ." (Citation omitted; internal quotation marks omitted.) *Dorry* v. *Garden*, 313 Conn. 516, 530, 98 A.3d 55 (2014). The legislative history makes clear that § 52-593a was intended to help a plaintiff preserve a cause of action by affording the marshal additional time to serve the process, not to afford the plaintiff additional time to deliver the process to the marshal. See 12 H.R. Proc., Pt. 7, 1967 Sess., p. 2798, remarks of Representative John W. Boyd ("[T]his bill is for the purpose of, in a small way, extending the statute of limitations of causes of action. It does so by providing that, in the event that the complaint or other process, *is personally delivered to the officer who will make service within the time limited by law*, that the period will be extended for [fifteen] days for the officer to make such service." (Emphasis added.)); see also *Tayco Corp.* v. *Planning & Zoning Commission*, 294 Conn. 673, 682, 986 A.2d 290 (2010) (§ 52-593a "intended to prevent a party from losing the right to a cause of action because of untimely service on the part of the *marshal* by giving the marshal additional time in which to effect proper service on the party in question" (emphasis in original)). In the present case, because the petitioner failed to timely deliver the process to Lilley personally, he is not entitled to the protections of § 52-593a, which was not intended to save the plaintiff from his own tardy action.

Moreover, a statutory interpretation that frustrates the evident intent of the legislature is not permitted

309 Conn. 608, 618, 72 A.3d 394 (2013) (" 'it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly' ").

Johnson *v.* Preleski

simply because we afford a liberal interpretation to remedial legislation. *Dorry* v. *Garden*, supra, 313 Conn. 531–32. The evidence overwhelmingly indicates that the legislature did not intend for electronic transmission alone to constitute "personally delivered" process. Permitting a petitioner to satisfy the "personal delivery" requirement of the statute, without establishing that the marshal personally received it, would undermine the legislative intent by rendering the word "personally" superfluous in violation of the "basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.) *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010).

Although evidence of timely delivery of process to a marshal need not be by the statutorily directed endorsement, the plaintiff must establish by some other evidence that the marshal personally received the process. This is precisely the point made by this court in *Doe* v. *West Hartford*, 328 Conn. 172, 177 A.3d 1128 (2018). In *Doe*, we explained that, "permitting a plaintiff to prove timely delivery of process to a marshal by means other than the statutorily directed endorsement would not result in an unjust windfall but, rather, *assuming that timeliness could be shown by other evidence*, simply would enable the plaintiff to take advantage of a protection that the legislature sought to provide to him . . . ." (Emphasis added.) Id., 186. Here, Lilley's return is silent as to when it was received from the petitioner. Consequently, it does not comply with the provisions of § 52-

Johnson *v.* Preleski

593a (b).[7] Moreover, the petitioner failed to demonstrate by other evidence that Lilley had personally received the original process prior to the lapse of the statute of limitations.[8] Unlike in *Doe*, in which deposition testimony from the plaintiff's attorney established that the attorney spoke with the marshal the day that process was retrieved from his office and that the marshal retrieved the process the day the statute of limitations expired, there is no such evidence in this case that Lilley actually received the process on August 5, 2014. See id., 189–91.[9] As such, Lilley did not have the documents necessary to make proper service by August 5.

---

[7] General Statutes § 52-593a (b) provides: "In any such case, the officer making service shall endorse under oath on such officer's return the date of delivery of the process to such officer for service in accordance with this section."

[8] The majority asserts that delivery via fax is distinguishable from delivery via mail because "the time, date, and success of a fax transmission are confirmed near instantaneously . . . ." This distinction misses the mark. Although it is true that the confirmation contained in the fax transmission report indicates when the fax was received by the machine, it does not indicate when the recipient personally received it. See *Coldwell Banker Commercial/Feist & Feist Realty Corp.* v. *Blancke P.W., L.L.C.*, 368 N.J. Super. 382, 393, 846 A.2d 633 (App. Div. 2004) ("Faxes do not afford the same certainty of delivery as certified mail or personal service, and do not provide a means to determine the actual recipient of the fax. . . . [T]he recipient of a fax is always a machine, not an individual.").

[9] I also note that the majority's conclusion that constructive possession of process by a serving officer is a sufficient substitute for actual possession, for purposes of saving late service, frustrates the intent of the legislature. The majority provides no support for this proposition and I can find none. Had the legislature intended for constructive possession to be the standard, it could have expressly done so as it has in other statutes. See, e.g., General Statutes § 12-392 (b) (4) (statutory language providing for "actual or constructive possession" of property); General Statutes § 54-33a (e) (same). As we have explained, "it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so." (Citation omitted; internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 618, 72 A.3d 394 (2013).

Moreover, even if constructive possession was an appropriate substitute for actual possession, there is no evidence that the marshal was in constructive possession of the process on August 5, 2014, because there is no evidence that he was aware that process had been transmitted to his office. See

335 Conn. 138 JULY, 2020 169

Johnson *v.* Preleski

Permitting delivery via fax opens the door to all manner of electronic delivery—including social media—because there is no rational way to draw the line at what electronic means are acceptable and which are not. This concern finds support in case law from other jurisdictions. When there is no statute or rule imposing a similar "personal delivery" requirement, courts have grappled with this issue in the context of e-mail and social media, including Facebook and Twitter postings. Typically, such methods of electronic delivery have been permitted when traditional methods of process have been exhausted without success, with special permission, or for international delivery. See *St. Francis Assisi* v. *Kuwait Finance House*, United States District Court, Docket No. 3:16-CV-3240-LB (N.D. Cal. September 30, 2016) (allowing service of process on international defendant via Twitter); *F.T.C.* v. *PCCare247 Inc.*, United States District Court, Docket No. 12 Civ. 7189 (PAE) (S.D.N.Y. March 7, 2013) (for sake of thoroughness, court authorized service of process via Facebook in addition to e-mail when all attempts to accomplish traditional service of process failed); *D.R.I.*, *Inc.* v. *Dennis*, United States District Court, Docket No. 03 Civ. 10026 (PKL) (S.D.N.Y. June 3, 2004) (permitting service by e-mail on defendant whose whereabouts unknown); *Baidoo* v. *Blood-Dzraku*, 48 Misc. 3d 309, 315–17, 5 N.Y.S.3d 709 (2015) (held that divorce summons can be served solely by private Facebook message to spouse's account); see also D. Stewart & A. Conley, "E-mail Service on Foreign Defendants: Time for an International Approach?," 38 Geo. J. Intl. L. 755, 764–72 (2007) (examining common threads in case law that permits e-mail service on foreign defendants).

*Connecticut National Bank* v. *Douglas*, 221 Conn. 530, 538–39, 606 A.2d 684 (1992) (describing constructive possession as knowingly having power and intention at given time to exercise dominion or control over something). Indeed, without at least a requirement that the marshal be aware that the process had been transmitted to his office, a petitioner could send the petition to the marshal at 11:59 p.m. the day the statute of limitations expires.

Johnson *v.* Preleski

Other courts have rejected the use of e-mail and social media for service of process. See, e.g., *Fortunato* v. *Chase Bank USA, N.A.*, United States District Court, Docket No. 11 Civ. 6608 (S.D.N.Y. June 7, 2012) (rejecting defendant's request to effectuate service of process via Facebook); *Lim* v. *Nojiri*, United States District Court, Docket No. 10-CV-14080 (E.D. Mich. June 27, 2011) ("neither service by fax or e-mail is sufficient to effect service of process under [rule 4 of the Federal Rules of Civil Procedure] or under Michigan state law"). It is important to note that several courts and scholars have raised various concerns about electronic service, including the problem of verifying whether and when such communications were opened or viewed. See, e.g., *Rio Properties, Inc.* v. *Rio International Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002) ("Despite our endorsement of service of process by [e-mail] in this case, we are cognizant of its limitations. In most instances, there is no way to confirm receipt of an [e-mail] message."); M. Schreck, "Preventing 'You've Got Mail'‹ from Meaning 'You've Been Served': How Service of Process by E-mail Does Not Meet Constitutional Procedural Due Process Requirements," 38 J. Marshall L. Rev. 1121, 1140 (2005) (Footnote omitted.) (listing "a multitude of other problems with permitting service of process by e-mail that contribute to the problem of confirming whether an e-mail was delivered or opened"); A. Shultz, comment, "Superpoked and Served: Service of Process via Social Networking Sites," 43 U. Rich. L. Rev. 1497, 1525–26 (2009) ("the limitations [on service of process via Facebook] are more severe than those associated with e-mail," including proving that "the person behind the profile contacted is actually the defendant"); C. Specht, "Text Message Service of Process—No LOL Matter: Does Text Message Service of Process Comport with Due Process?," 53 B.C. L. Rev. 1929, 1955–59 (2012) (discussing problems with service of process via text message).

Johnson *v.* Preleski

The numerous concerns arising in this context and the limitations to be imposed to protect both parties are properly left to the legislature. See *State* v. *Whiteman*, 204 Conn. 98, 103, 526 A.2d 869 (1987) ("[i]n areas where the legislature has spoken . . . the primary responsibility for formulating public policy must remain with the legislature"). When the legislature has chosen to adopt alternative means for the delivery of legal process, it has demonstrated its ability to craft legislation that accomplishes that objective. See, e.g., General Statutes § 52-52 (b) (publication of orders of notice of legal or judicial proceedings may be left with newspaper); General Statutes § 52-57 (e) (service of process on voluntary association made by, inter alia, mailing it by registered or certified mail, postage prepaid, to defendant's last known address); General Statutes § 52-59d (b) (service of process outside of the United States may be made "upon such terms as the court deems reasonably calculated to give the defendant actual notice"); General Statutes § 52-62 (c) (service of process on a nonresident in action for negligent operation of motor vehicle may be made by, inter alia, mailing it registered or certified mail, postage prepaid, to defendant's last known address); General Statutes § 52-64 (service of process in action against state may be made by sending process by certified mail, return receipt requested, to attorney general).[10] The decision to permit electronic delivery is one that requires the evaluation of various public policy considerations given the seem-

_____

[10] We note that states that have permitted electronic delivery of process have done so by explicit statutory provisions. See, e.g., S.C. Code Ann. § 26-6-190 (C) (2007) (providing for e-mail service of process on corporations, partnerships, and unincorporated associations); S.C. Code Ann. § 26-6-195 (Supp. 2019) (allowing government agency to effect service of process by e-mail on any vendor, entity, or individual that governmental agency regulates or with which government does business); N.Y. C.P.L.R. § 308 (5) (McKinney 2010) (where traditional methods of service of process impracticable, court may direct service in any manner it deems likely to notify defendant).

Johnson *v.* Preleski

ingly infinite possible electronic means of transmitting information such as e-mail, text, and social media platforms or applications. Our legislature could have, but chose not to, use open-ended language that would have left the matter to the courts to interpret. See *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 618, 72 A.3d 394 (2013) ("it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (citation omitted; internal quotation marks omitted)); see also *Rio Properties, Inc.* v. *Rio International Interlink*, supra, 284 F.3d 1018 (explaining that e-mail service was properly ordered by District Court using its discretion under rule 4 (f) (3) of Federal Rules of Civil Procedure, which allows for service by *other means* not prohibited by international agreement).

In the present case, there is no evidence of when Lilley or anyone in his office actually received the fax, only that it had been received by the fax machine in Lilley's office at 5:01 p.m. on August 5, 2014.[11] See *Salley* v. *Board of Governors*, 136 F.R.D. 417, 419 (M.D.N.C. 1991) (Facsimile transmission is a "process of electronically sending an exact copy of an image, through telecommunications, between copying machines. There is no need for an operator to be continuously on duty at the place of reception."). Specifically, Lilley's return does not indicate when he received the process, and he does not recall whether he physically held the process in his hand or even whether he was at work on August 5, 2014. Peat attempted to call Lilley on August 5, but

_____

[11] I note that, unlike in *Doe*, in which deposition testimony from the plaintiff's attorney established that the attorney actually spoke with the marshal the day that process was retrieved from his office; *Doe* v. *West Hartford*, supra, 328 Conn. 189–91; the only evidence in the present case regarding the timing of receipt, rather than transmittal, of the process, was the fax transmission report. The report does not establish that anyone in the office actually received the process on August 5.

Johnson *v.* Preleski

he did not answer. Indeed, there is no evidence that Lilley ever received the original process prior to serving the faxed copy of it on August 6. Given the transmittal cover letter's statement that the original would be mailed, it is highly unlikely that Lilley would have received it less than one day later. As a result, Lilley was not able to compare the copy of the fax that he was serving on the defendant to the original. Thus, the evidence does not establish that personal delivery was accomplished by August 5, 2014. Rather, the evidence only established that Lilley had actual possession of the faxed copy of the process on August 6, 2014, the day he served the process on the respondent and the day after the statute of limitations had expired. As we have explained, § 52-593a was "intended to prevent a party from losing the right to a cause of action because of untimely service on the part of the marshal by *giving the marshal additional time* in which to effect proper service . . . ." (Emphasis altered.) *Tayco Corp.* v. *Planning & Zoning Commission*, supra, 294 Conn. 682. Section 52-593a was not intended to give the party additional time, beyond the statute of limitations, to deliver the process to the marshal. See id., 686. Here, the petitioner did not establish that personal delivery to Lilley was accomplished before the expiration of the statute of limitations.

The parties agree that the petition would be time barred by General Statutes § 52-582 unless the process was "personally delivered" to Lilley by August 5, 2014. Thus, because I conclude that "personal delivery" requires that the recipient be in actual possession of the original process and because the petitioner failed to establish that Lilley was in possession of either the faxed or original process before the lapse of the statute of limitations, I would affirm the judgment of the Appellate Court dismissing the action. Accordingly, I respectfully dissent.