*310 OPINION OF THE COURT
Matthew F. Cooper, J.
As recently as 10 years ago, it was considered a cutting-edge development in civil practice for a court to allow the service of a summons by email. Since then, email has all but replaced ordinary mail as a means of written communication. And while the legislature has yet to make email a statutorily authorized method for the service of process,[1] courts are now routinely permitting it as a form of alternative service.
The past decade has also seen the advent and ascendency of social media, with websites such as Facebook and Twitter occupying a central place in the lives of so many people.[2] Thus, it would appear that the next frontier in the developing law of the service of process over the Internet is the use of social media sites as forums through which a summons can be delivered. In this matrimonial action, the issue before the court, by way of plaintiff wife’s ex parte application, is whether she may serve defendant husband with the divorce summons solely by sending it through Facebook by private message to his account.
The standard method — or perhaps better stated, the method of first resort — for serving the summons in a divorce action is personal delivery to a defendant (Domestic Relations Law § 232 [a]). This reflects the great emphasis that this state places on insuring that a person who is being sued for divorce — a proceeding that can have immeasurable financial and familial consequences — be made aware of and afforded the opportunity to appear in the action. The problem with personal service, of course, is that in order for it to be accomplished, a plaintiff must be able to locate the defendant. Even where a defendant’s whereabouts are known, there are times when it is logistically difficult, if not impossible, for a process server to gain the close proximity necessary for personal delivery.
*311 Fortunately, the Domestic Relations Law provides a remedy for a person who is seeking a divorce but faces the prospect of being unable to effect personal service. Domestic Relations Law § 232 permits plaintiffs to request permission to utilize one of the alternative methods allowed under the Civil Practice Law and Rules that does not require “in-hand” delivery to the defendant. One such method, often referred to as “substitute service,” involves delivering the summons to a person of “suitable age and discretion” at the defendant’s “actual place of business, dwelling place or usual place of abode” (CPLR 308 [2]). Another method, known as “nail and mail” service, requires affixing the summons to the door of a defendant’s “actual place of business, dwelling place or usual place of abode” (CPLR 308 [4]), and then, as with “substitute service,” mailing a copy to the defendant’s “last known residence” or “actual place of business.” A third method is “publication service,” where the summons is printed in a newspaper designated by the court and which can be granted upon a showing that “service cannot be made by another prescribed method with due diligence” (CPLR 315).
Additionally, pursuant to CPLR 308 (5), a court, upon a plaintiff’s ex parte application, may direct the manner by which service is to be made. This allows a court to go beyond any of the specifically prescribed methods of service and devise a method that fits the particular circumstances of the case. An application for alternative service under CPLR 308 (5) can be granted only upon a sufficient showing that personal service, “substitute service,” or “nail and mail” service would prove “impracticable.” Case law, in accordance with well-established constitutional principles, further imposes the requirement that the method devised by the court be one that is “reasonably calculated, under all the circumstances, to apprise [the defendant] of the pendency of the action” (Hollow v Hollow, 193 Misc 2d 691, 696 [Sup Ct, Oswego County 2002], quoting Mullane v Central Hanover Bank & Trust Co., 339 US 306, 314 [1950]).
In the instant application, plaintiff asks the court to find that service of the divorce summons via a social media site, in this case Facebook, constitutes an appropriate form of alternative service under CPLR 308 (5). Moreover, contending that she has no other way to reach defendant, she requests that this judicially-crafted method of service be designated the only means by which notice of the divorce action is given. In order for her application to be granted, plaintiff must first demon *312 strate that she is unable to have the summons personally-served on defendant, the method of service initially prescribed by Domestic Relations Law § 232 (a). Next, she must show that it would be “impracticable” to serve him by “substitute service” on a person of suitable age and discretion (CPLR 308 [2]) or by using “nail and mail” (CPLR 308 [4]). Finally, she must show that sending the summons through Facebook can reasonably be expected to give him actual notice that he is being sued for divorce.
Plaintiff has easily met the requirement of demonstrating that she will be unable to effect personal service on defendant. Although the parties married in 2009, they never resided together, and the last address plaintiff has for defendant is an apartment that he vacated in 2011. Plaintiff has spoken with defendant by telephone on occasion and he has told her that he has no fixed address and no place of employment. He has also refused to make himself available to be served with divorce papers. As detailed in her attorney’s affirmation, the investigative firms that plaintiff hired to assist in locating defendant have all been unsuccessful in their efforts, the post office has no forwarding address for him, there is no billing address linked to his prepaid cell phone, and the Department of Motor Vehicles has no record of him. Inasmuch as plaintiff is unable to find defendant, personal delivery of the summons to him is an impossibility.
Similarly, plaintiff has shown that it would be an exercise in futility to attempt the two alternative service methods provided for by CPLR 308. Both “substitute service” and “nail and mail” service require knowledge of the defendant’s “actual place of business, dwelling place or usual place of abode” (CPLR 308 [2], [4]). The record establishes that plaintiff has been unsuccessful in obtaining either a business or home address for defendant, even though she has diligently sought that information. As a result, she has met her burden of demonstrating that it would be impracticable to attempt to serve defendant by either of these methods (see Franklin v Winard, 189 AD2d 717 [1st Dept 1993]).
Having demonstrated a sound basis for seeking alternative service pursuant to CPLR 308 (5), plaintiff must now show that the method she proposes is one that the court can endorse as being reasonably calculated to apprise defendant that he is being sued for divorce. This hurdle poses a number of challenges. First, there are only a handful of reported decisions, *313 mostly from federal district courts, that have addressed the issue of service of process being accomplished through social media, with there being an almost even split between those decisions approving it and those rejecting it (compare Federal Trade Commn. v PCCare247 Inc., 2013 WL 841037, 2013 US Dist LEXIS 31969 [SD NY, Mar. 7, 2013, No. 12 Civ 7189 (PAE)] [allowing service of process in part by social media], WhosHere, Inc. v Orun, 2014 WL 670817, 2014 US Dist LEXIS 22084 [ED Va, Feb. 20, 2014, No. 1:13-cv-00526 (AJT/TRJ)] [same], and Matter of Noel B. v Anna Maria A., NYLJ 1202670317766, 2014 NY Misc LEXIS 4708 [Fam Ct, Richmond County 2014] [same], with Fortunato v Chase Bank USA, N.A., 2012 WL 2086950, 2012 US Dist LEXIS 80594 [SD NY, June 7, 2012, No. 11 Civ 6608 (JFK)] [denying service by Facebook], Joe Hand Promotions, Inc. v Shepard, 2013 WL 4058745, 2013 US Dist LEXIS 113578 [ED Mo, Aug. 12, 2013, No. 4:12cv1728 (SNLJ)] [same], and In re Adoption of K.P.M.A., 341 P3d 38 [Okla 2014] [same]). Second, as will be further discussed, the cases permitting such service have done so only on condition that the papers commencing the lawsuit be served on the defendant by another method as well. Thus, in seeking permission to effectuate service of the divorce summons by simply sending it to defendant through a private Facebook message, plaintiff is asking the court, already beyond the safe harbor of statutory prescription, to venture into uncharted waters without the guiding light of clear judicial precedent.
Consideration must also be given to the fact that the way plaintiff proposes to provide defendant with notice of the divorce represents a radical departure from the traditional notion of what constitutes service of process. Even decisions from as recently as 2012 and 2013 have referred to the use of Face-book messaging for the purpose of commencing a lawsuit as being a “novel concept” (PCCare247 Inc., 2013 WL 841037, *5, 2013 US Dist LEXIS 31969, *16 [permitting it as a supplemental method of service]) and “unorthodox to say the least” (Fortunato, 2012 WL 2086950, *2, 2012 US Dist LEXIS 80594, *6 [rejecting it as a means of service]).
That a concept is new to the law is something that may very well require a court to exercise a high degree of scrutiny and independent legal analysis when judicial approval is sought. But a concept should not be rejected simply because it is novel or nontraditional. This is especially so where technology and the law intersect. In this age of technological enlightenment, *314 what is for the moment unorthodox and unusual stands a good chance of sooner or later being accepted and standard, or even outdated and passé. And because legislatures have often been slow to react to these changes, it has fallen on courts to insure that our legal procedures keep pace with current technology (see New England Merchants Natl. Bank v Iran Power Generation & Transmission Co., 495 F Supp 73, 81 [SD NY 1980] [“Courts . . . cannot be blind to changes and advances in technology”]). As noted by the United States Court of Appeals for the Ninth Circuit in Rio Props., Inc. v Rio Inti. Interlink (284 F3d 1007, 1017 [9th Cir 2002]), one of the earliest cases authorizing service of process by email, the “broad constitutional principle” upon which judicially-devised alternative service is based “unshackles . . . courts from anachronistic methods of service and permits them entry into the technological renaissance.”
In the final analysis, constitutional principles, not the lack of judicial precedent or the novelty of Facebook service, will be ultimately determinative here. The central question is whether the method by which plaintiff seeks to serve defendant comports with the fundamentals of due process by being reasonably calculated to provide defendant with notice of the divorce. Or more simply posed: If the summons for divorce is sent to what plaintiff represents to be defendant’s Facebook account, is there a good chance he will receive it?
In order for the question to be answered in the affirmative, plaintiff must address a number of this court’s concerns. The first is that the Facebook account that plaintiff bejieves is defendant’s might not actually belong to him. As is well known, the Facebook profile somebody views online may very well belong to someone other than whom the profile purports it to be. This has led courts to observe that “anyone can make a Facebook profile using real, fake, or incomplete information, and thus, there is no way for the Court to confirm whether the Facebook page belongs to the defendant to be served” (PCCare247 Inc., 2013 WL 841037, *5, 2013 US Dist LEXIS 31969, *15 [internal quotation marks omitted], quoting Fortunato, 2012 WL 2086950, *2, 2012 US Dist LEXIS 80594, *7-8). As a result, this court required plaintiff to submit a supplemental affidavit to verify that the Facebook account she references is indeed that of the defendant. Plaintiff submitted such an affidavit, to which she annexed copies of the exchanges that took place between her and defendant when she contacted him through his *315 Facebook page, and in which she identified defendant as the subject of the photographs that appear on that page. While it is true that plaintiff’s statements are not absolute proof that the account belongs to defendant — it being conceivable that if plaintiff herself or someone at her behest created defendant’s page, she could fabricate exchanges and post photographs— plaintiff has nevertheless persuaded the court that the account in question does indeed belong to defendant.
The second concern is that if defendant is not diligent in logging on to his Facebook account, he runs the risk of not seeing the summons until the time to respond has passed. Here too, plaintiff’s affidavit has successfully addressed the issue. Her exchanges with defendant via Facebook show that he regularly logs on to his account. In addition, because plaintiff has a mobile phone number for defendant, both she and her attorney can speak to him or leave a voicemail message, or else send him a text message alerting him that a divorce action has been commenced and that he should check his account (WhosHere, Inc., 2014 WL 670817, *4, 2014 US Dist LEXIS 22084, *13 [“(C)ourts have taken into consideration whether defendant already possessed either knowledge of suit or that he may be the subject to a suit”]).
The third concern is whether a backup means of service is required under the circumstances. Although, as was discussed, other court decisions have endorsed using Facebook as a means of service, they have done so only where Facebook was but one of the methods employed, not the only method. As the court stated in PCCare247 Inc. (2013 WL 841037, *5, 2013 US Dist LEXIS 31969, *15), “[t]o be sure, if the [plaintiff] were proposing to serve defendants only by means of Facebook, as opposed to using Facebook as a supplemental means of service, a substantial question would arise whether that service comports with due process.” In that case, and as well as in WhosHere, Inc., the other federal court decision authorizing Facebook service, the court stressed that it was allowing the use of a social media site only in conjunction with notice being sent to the defendants by email. In Noel B. (NYLJ 1202670317766, *2, 2014 NY Misc LEXIS 4708, *4), the only decision from a state court permitting service via Facebook, the petitioner was required to mail a copy of the child support summons and petition to the respondent’s “previously used last known address.”
Here, plaintiff does not have an email address for defendant and has no way of finding one. Nor does she have a street ad *316 dress for defendant that could constitute a viable “last known address”; defendant’s last known address dates back at least four years and the post office confirmed that defendant no longer resides there and he has left no forwarding address. Thus, plaintiff has a compelling reason to make Facebook the sole, rather than the supplemental, means of service, with the court satisfied that it is a method reasonably calculated to give defendant notice that he is being sued for divorce.
Before granting plaintiff leave to serve defendant via Face-book, a method of alternative service judicially-devised pursuant to CPLR 308 (5), there is one remaining question that should be addressed: Why use Facebook as either the sole or the supplemental means of service in the first place when there is a statutorily prescribed method of service readily available? That method is service by publication, something that is specifically authorized under CPLR 315. After all, publication is not only expressly sanctioned by the CPLR, but it is a means of service of process that has been used in New York in one form or another since colonial times. Even today, it is probably the method of service most often permitted in divorce actions when the defendant cannot be served by other means.
The problem, however, with publication service is that it is almost guaranteed not to provide a defendant with notice of the action for divorce, or any other lawsuit for that matter (see Snyder v Alternate Energy Inc., 19 Misc 3d 954 [Civ Ct, NY County 2008]; Adam Liptak, How to Tell Someone She’s Being Sued, Without Really Telling Her, NY Times, Nov. 19, 2007, http://www.nytimes.com/2007/ll/19/us/19bar.html). In divorce cases brought in New York County, plaintiffs are often granted permission to publish the summons in such newspapers as the New York Law Journal or the Irish Echo. If that were to be done here, the chances of defendant, who is neither a lawyer nor Irish, ever seeing the summons in print, either in those particular newspapers or in any other, are slim to none. The dangers of allowing somebody to be divorced and not know it are simply too great to allow notice to be given by publication, a form of service that, while neither novel nor unorthodox, is essentially statutorily authorized non-service. This is especially so when, as here, there is a readily available means of service that stands a very good chance of letting defendant know that he is being sued.
Moreover, the court will not require publication in any newspaper even as a backup method to Facebook. Although a *317 more widely circulated newspaper, like the New York Post or the Daily News, might reach more readers, the cost, which approaches $1,000 for running the notice for a week, is substantial, and the chances of it being seen by defendant, buried in an obscure section of the paper and printed in small type, are still infinitesimal.
Under the circumstance presented here, service by Facebook, albeit novel and nontraditional, is the form of service that most comports with the constitutional standards of due process. Not only is it reasonably calculated to provide defendant with notice that he is being sued for divorce, but every indication is that it will achieve what should be the goal of every method of service: actually delivering the summons to him.
In light of the foregoing, plaintiff is granted permission to serve defendant with the divorce summons using a private message through Facebook. Specifically, because litigants are prohibited from serving other litigants, plaintiff’s attorney shall log into plaintiff’s Facebook account and message the defendant by first identifying himself, and then either including a web address of the summons or attaching an image of the summons. This transmittal shall be repeated by plaintiff’s attorney to defendant once a week for three consecutive weeks or until acknowledged by the defendant. Additionally, after the initial transmittal, plaintiff and her attorney are to call and text message defendant to inform him that the summons for divorce has been sent to him via Facebook.

. The last time the legislature amended a provision of the law dealing with service of process on individuals was in 1994, back at the dawn of the Internet age and before email was widely utilized.

. The “many” includes the 157,000,000 people in the United States who, according to Facebook’s 2014 fourth quarter shareholder report, check their Facebook accounts each day. It does not, by and large, include the members of the New York State Judiciary, who have been advised that they should be wary of using social network sites (see Advisory Comm on Jud Ethics Op 08-176 [2009]; Advisory Comm on Jud Ethics Op 13-39 [2013]; see also Richard Raysman & Peter Brown, Judicial and Attorney Misuse of Social Media Can End Careers, NYLJ, Mar. 10, 2015 at 5, col 1).