Filed 1/22/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| QUEEN SEARLES, | B296011 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 18PDRO01062) |
| v. | |
| MICHAEL ARCHANGEL, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Amy Pellman, Judge.  Affirmed.

Queen Searles, in pro. per., for Plaintiff and Appellant.

No appearance by Defendant and Respondent.

_____

The superior court dismissed Queen Searles's petition for a civil harassment restraining order when she was unable to personally serve Michael Archangel with a copy of the petition and notice of hearing as required by Code of Civil Procedure section 527.6, subdivision (m).[1]  On appeal Searles argues the court erred in denying her motion to waive traditional service and allow her to serve Archangel through social media.  Although we acknowledge the practical merit to Searles's request, the superior court properly concluded it was obligated to follow section 527.6's express requirement for personal service. Accordingly, we affirm the order of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Petition for Restraining Order and Initial Hearing Dates*

Searles, self-represented in the superior court as she is on appeal, filed a request for a civil harassment restraining order on July 23, 2018 using mandatory Judicial Council form CH-100, identifying Archangel as the person from whom protection was sought.  In the lines for Archangel's address Searles wrote, "None."

Searles alleged that, while she was in her car in a parking lot near a Starbucks in the Burbank Empire Center on July 14, 2018, Archangel threatened her "us[ing] a wicked looking stick to perform his personal form of Martial Arts, which he calls 'Tae Kan Kick Yo Ass' or [']Tae Kick Yo Ass.'"  Checking the section of the form requesting she be allowed to give less than five days' notice of hearing, Searles wrote, "Petitioner does not know how to

_____

[1]    Statutory references are to this code unless otherwise stated.

2

contact the Stalker, Michael (Yahziel) Archangel, coupled with the fact that an Empire Center Security Supervisor stated that the respondent is 'smart enough to know when & how long to [stay] away.' The stalker may stay away long enough to avoid being served prior to the scheduled court date as Petitioner told him that she would be filing on July 17, 2018 or as soon thereafter as possible. Petitioner is concerned that he may not come to any of the Starbucks locations where she is known to frequent for a while as he did in June 2018." Searles included in an attachment to the petition an extended narrative of Archangel's threatening conduct, as well as photographs of what she described as his intimidating actions and gestures.

The court issued a temporary restraining order (TRO) on the same day as the petition was filed. In the portion of the TRO form filled out in advance by Searles, Archangel's home address was listed as "unknown/homeless"; and he was described as an "unknown vagabond-stalker." The order authorized service on Archangel by the sheriff or marshal without charge because it was based on a credible threat of violence or stalking. The hearing on Searles's petition was scheduled for August 14, 2018.

Searles moved for a continuance of the August 14, 2018 hearing, stating she had been unable to serve Archangel. She explained, Archangel "is homeless and avoids the area when he is aware that someone is looking to bring charges against him." The court continued the hearing to September 6, 2018 and ordered that the previously issued TRO would remain in effect until the continued hearing date. Searles again moved to continue the hearing on September 6, 2018 when she remained unable to serve Archangel. The court granted the request,

3

continued the hearing to September 27, 2018 and ordered the TRO to remain in full force and effect until the new hearing date.

2. *Searles's Motion To Waive Traditional Service*

Together with another request to continue the hearing, on September 27, 2018 Searles moved to waive traditional service and for authorization to serve Archangel by social media. Specifically, stating that Archangel followed her public Facebook, YouTube and Twitter postings, Searles requested leave to serve him by simultaneously posting the documents "to the Scribd website and linked to Facebook, Twitter and YouTube."

In her supporting declaration Searles stated Archangel was intentionally making himself unavailable and described the efforts she had made to effect personal service, primarily requesting that employees and customers at various businesses where Searles had seen Archangel serve him with her papers if they saw him near their stores.

In a legal memorandum Searles quoted several out-of-state cases in which service of process by social media had been permitted, including *Baidoo v. Blood-Dzrako* (N.Y. Sup. Ct. 2015) 48 Misc.3d 309 [5 N.Y.S.3d 709] in which a New York family law court authorized service of the summons in a divorce action through a direct message to the defendant's Facebook account (he had no email address), a decision based on state statutes allowing a court to authorize an alternative method of service if a sufficient showing had been made that personal service and traditional substitute service would be impractical and the method proposed was reasonably calculated to provide the defendant with actual notice of the pendency of the action. In reaching this conclusion, the court rejected service by publication as a viable option, explaining, "[I]t is almost guaranteed *not* to

4

provide a defendant with notice of the action for divorce, or any other lawsuit for that matter." (*Id.* at p. 316.) The court continued, "Under the circumstance presented here, service by Facebook, albeit novel and nontraditional, is the form of service that most comports with the constitutional standards of due process. Not only is it reasonably calculated to provide defendant with notice that he is being sued for divorce, but every indication is that it will achieve what should be the goal of every method of service: actually delivering the summons to him." (*Id.* at p. 317.)

Searles asserted that Archangel, like the defendant in the *Baidoo* case, could not be personally served and, because no one knew where he lived, he also could not be served by mail. Accordingly, she argued the court had discretion pursuant to section 413.30 to authorize service in a different manner provided it was reasonably calculated to give actual notice to the party to be served, as she asserted use of social media would be in this case.

At the hearing on September 27, 2018 the court, after hearing Searles's description of what she had done to date in her efforts to effect personal service, denied the motion to allow service by an alternative method and directed her to keep trying to serve Archangel personally, as required by section 527.6, subdivision (m). The court explained the Los Angeles County Sheriff's Department could assist her and suggested she ask for help at the sheriff's office located in the courthouse. The court continued the hearing to October 18, 2018 and ordered the TRO to remain in effect until that date.[2]

---

[2] The court on September 27, 2018 also granted Searles's request for a fee waiver, which included a waiver of any sheriff's fees for serving the petition.

5

### 3. *Searles's Renewed Motion and the Ultimate Dismissal of Her Petition Without Prejudice*

With her October 18, 2018 request to continue the hearing date, Searles again stated Archangel could not be personally served and explained the sheriff had attempted service on October 1, 2018 at the Starbucks where Archangel was most often seen, but had returned the documents marked, "Not Found." The hearing was continued to November 29, 2018. The TRO remained in full force and effect.[3]

On November 29, 2018 Searles renewed her motion for authorization to serve Archangel by social media, providing the court with a slightly modified version of the supporting documents she had previously filed. At the hearing the court denied Searles's request to present witnesses to testify as to the difficulty of finding Archangel in order to personally serve him and denied her request for service by social media as unauthorized by the Code of Civil Procedure. The court stated it would give her one final opportunity to effect personal service on Archangel, continued the hearing to January 31, 2019 and extended the TRO through the hearing date.

The court on January 31, 2019, noting that Archangel had not been personally served as required, dismissed Searles's petition for a civil harassment restraining order without prejudice and dissolved the TRO. The court explained to Searles,

---

[3] On October 29, 2018 Commissioner Timothy Martella, who had presided over the proceedings subsequent to issuance of the TRO, accepted Searles's peremptory challenge pursuant to section 170.6, filed October 10, 2018, and ordered the case reassigned to another court for the hearing on November 29, 2018.

if she still was concerned about being harassed, she could file another petition and request for a TRO, adding, "If it has merit, then it will get granted and that will give you some more time to have him served.  If you can't have him served, then you can't."[4]

## DISCUSSION

### 1. *The Developing Law of Service by Social Media*

As discussed, in *Baidoo v. Blood-Dzrako, supra*, 48 Misc.3d 309, cited by Searles, a New York family law court authorized service of the summons and complaint in a divorce case pursuant to state statutes generally allowing service "in such manner as the court, upon motion without notice, directs," if service is "impracticable" by traditional methods including personal service and substitute service.  (N.Y. CPLR § 308(5).)  Similarly, in *K.A. v. J.L.* (2016) 450 N.J. Super. 247 the court approved service of a complaint and order to show cause via Facebook pursuant to rule 4:4-3(b) of the New Jersey Rules of Court, which permits the court to authorize an alternative method of service if the

---

[4]    Searles on January 31, 2019 moved to vacate the orders entered on September 27, 2018 and November 29, 2018.  As to the earlier order, Searles argued Commissioner Martella should have granted the challenge for cause she filed on October 29, 2018, rather than her earlier filed peremptory challenge, and the September 27, 2018 order denying her motion to waive traditional service was invalid because he was biased against her.  Any challenge to Commissioner Martella's failure to grant her motion to disqualify him for cause, however, is not reviewable on appeal.  (*People v. Hull* (1991) 1 Cal.4th 266, 268.)  As to the later order, Searles contended Judge Dorothy Shuba, who presided at the November 29, 2018 hearing and denied her renewed motion, did not give her a fair hearing.  The court (Judge Amy Pellman) did not rule on the motion before dismissing the case.

plaintiff's good faith attempts to effect personal service are unsuccessful: "If service cannot be made by any of the modes provided by this rule, any defendant may be served as provided by court order, consistent with due process of law." (See also *WhosHere, Inc. v. Orun* (E.D.Va. Feb. 20, 2014, No. 1:13-CV-00526-AJT-TRJ) 2014 U.S.Dist. Lexis 22084 [authorizing service of summons and complaint on a foreign defendant by email and social networking websites identified by defendant as belonging to him].)

Texas has taken authorization of service of process by social media one step further. In 2019 the Texas Legislature directed that state's supreme court to "adopt rules to provide for the substituted service of citation by an electronic communication sent to a defendant through a social media presence." (Tex. Civ. Prac. & Rem. Code, § 17.033, subd. (b).) In response, the Texas Supreme Court on August 21, 2020 approved amendments to rule 106, subdivision (b), of the Texas Rules of Civil Procedure, effective December 31, 2020, to provide, "Upon motion supported by a statement—sworn to before a notary or made under penalty of perjury—listing any location where the defendant can probably be found and stating specifically the facts showing that service has been attempted under (a)(1) [personal service] or (a)(2) [registered or certified mail] at the location named in the statement but has not been successful, the court may authorize service: [¶] . . . [¶] (2) in any other manner, including electronically by social media, email, or other technology, that the statement or other evidence shows will be reasonably effective to give the defendant notice of the suit." The rule's comment explains, "Amended Rule 106(b)(2) clarifies that a court may, in proper circumstances, permit service of citation electronically by

8

social media, email, or other technology. In determining whether to permit electronic service of process, a court should consider whether the technology actually belongs to the defendant and whether the defendant regularly uses or recently used the technology."[5]

As summarized in a recent law review note, "Traditional methods of service of process are preferred, but are not always practicable. When a defendant cannot be reached through traditional methods, judges should use their discretion and allow alternative service by social media in appropriate cases. Current methods of alternative service, such as publication, are not efficient or effective. By allowing alternative service of process via social media in certain cases, the defendant is much more likely to receive actual notice in a cost-effective manner." (Davis, *Social Media: A Good Alternative, for Alternative Service of Process* (2020) 52 Case Western Reserve J.Internat. Law 573.)

Commentators who support permitting courts to authorize service of process through social media in appropriate circumstances, however, have articulated several important

---

[5]   According to the National Center for State Courts, Texas was not the first state to put into its rules such a provision. Rule 4(e) of the Alaska Rules of Civil Procedure permits a litigant to serve process through posting to the court's legal notice website or to a social media account once the litigant has made a diligent effort to serve process by certified mail/restricted delivery/return receipt and/or via a process server. (See NCSC, New Texas Rules Explicitly Permit Service of Process Via Social Media (Aug. 27, 2020) <https://www.ncsc.org/information-and-resources/trending-topics/trending-topics-landing-pg/new-texas-rules-explicitly-permit-service-of-process-via-social-media> [as of Jan. 22, 2021], archived at<https://perma.cc/7QNX-E7BB>.)

limitations on its use.  "First, the social media site itself must provide a platform consistent with service of process.  This means that the site should offer a non-connected user a means of contacting another user through a private message.  [fn. omitted.]  The messaging feature of the site must also have the ability to include attachments in the message so that the summons and the complaint can be attached and sent in the message. . . .  [¶]  Second, because a question will likely be raised about whether the account belongs to the defendant, the plaintiff must make reasonable efforts to verify the account through corroboration of the information contained in it. . . .  [¶]  Third, in order to establish timeliness of notice via social media, there must be evidence of the defendant's use of the site, such as status updates, postings on others' walls, connecting with other users, or similar activity. . . .  If frequency of use cannot be shown *or* the user's account has been set to private, service would not be permissible."  (Knapp, *#serviceofprocess @socialmedia: Accepting Social Media for Service of Process in the 21st Century* (2014) 74 La. L.Rev. 547, 576; see Davis, *Social Media:  A Good Alternative, for Alternative Service of Process*, *supra*, 52 Case Western Reserve J.Internat. Law at pp. 590-593 [noting issues related to authenticity of the social media account to which service was directed]; Upchurch, *"Hacking" Service of Process: Using Social Media to Provide Constitutionally Sufficient Notice of Process* (2016) 38 U. Ark. Little Rock L.Rev. 559, 580-590 [explaining to be constitutionally sufficient social media notice must be directed to the proper person, conspicuous and verifiable and must permit sufficient access to the summons and complaint].)[6]

---

[6]      Notably, Searles's motion sought leave to serve Archangel

The question before us, however, is not whether it would be a sound policy development to permit the superior court to authorize service by social media, at least in those circumstances where service by publication in a newspaper is now deemed sufficient, let alone whether it should be permitted in civil harassment restraining order cases, where personal service of the petition and notice of hearing is now required. If it were, our answer to the first of those questions would be a qualified yes. As Justice Cooper wrote in *Baidoo*, "[A] concept should not be rejected simply because it is novel or nontraditional. This is especially so where technology and the law intersect. In this age of technological enlightenment, what is for the moment unorthodox and unusual stands a good chance of sooner or later being accepted and standard, or even outdated and passé." (*Baidoo v. Blood-Dzraku*, *supra*, 48 Misc.3d at pp. 313-314.)

We encourage the Legislature and the Judicial Council, which have already authorized extensive use of electronic service of notice (see Code Civ. Proc., § 1010.6; Cal. Rules of Court, rule 2.251; see also Prob. Code, § 1215, subd. (c)), to consider developing pilot programs to test the efficacy of utilizing new technologies as an approved method of service of process. But as the superior court properly ruled in this case, current law requires personal service of the petition, TRO and notice of hearing in civil harassment restraining order cases and does not permit the court to approve alternative methods of service.

---

by posting the petition and notice of hearing on her own social media platforms, not by directing it to Archangel's sites, which poses different, but equally difficult, issues of verification of receipt (that is, of actual notice).

11

2. *The Service Requirement in Civil Harassment Restraining Order Cases*

Section 527.6, subdivision (a), permits a person who has suffered harassment as defined in the statute to seek an ex parte TRO and, after notice and a hearing, a protective order prohibiting harassment for up to five years (frequently referred to as a "permanent" restraining order).[7]  Section 527.6, subdivision (g), provides a hearing must be held on the petition within 21 days, or, if good cause is shown, within 25 days from the date a TRO has been granted or denied, although subdivision (p)(1) authorizes the court to grant a continuance of the hearing on the petition on a showing of good cause. Subdivision (m) provides, "Upon the filing of a petition under this section, the respondent shall be personally served with a copy of the petition, temporary restraining order, if any, and notice of hearing of the petition.  Service shall be made at least five days before the hearing.  The court may for good cause, on motion of the petitioner, or on its own motion, shorten the time for service on the respondent."  (See Cal. Rules of Court, rule 3.1160(c) ["The request for a protective order, notice of hearing, and any temporary restraining order, must be personally served on the respondent at least five days before the hearing, unless the court for good cause orders a shorter time.  Service must be made in the manner provided by law for personal service of summons in civil actions"].)

---

[7]     The restraining order may be renewed for a duration of no more than five additional years without a showing of any further harassment since the issuance of the original order.  (§ 527.6, subd. (j)(1).)

3. *Section 413.30 Does Not Authorize Alternative Methods of Service in Civil Harassment Restraining Order Cases*

Section 413.30 provides, "Where no provision is made in this chapter[8] or other law for the service of summons, the court in which the action is pending may direct that summons be served in a manner which is reasonably calculated to give actual notice to the party to be served and that proof of such service be made as prescribed by the court." Searles argued in the superior court, and contends again on appeal, that, given her inability to effect personal service on a homeless respondent who was actively evading service by staying away from locations he usually visited, section 413.30 authorized the court to allow service by social media as an alternative that was reasonably calculated to give actual notice of the case to Archangel.

---

8 Chapter 4 of Part 2, Title 5, of the Code of Civil Procedure, in which section 413.30 is located, provides for service of summons in civil actions. Section 413.10 states, "Except as otherwise provided by statute, a summons shall be served on a person: [¶] (a) Within this state, as provided in this chapter." Sections 415.10 through 415.95, also part of the chapter, describe the various permissible modes of service of summons, including personal delivery to the person to be served (§ 415.10); under defined circumstances, leaving a copy with a competent person at the home of the person to be served and thereafter mailing copies to that address, generally known as "substitute service" (§ 415.20, subd. (b)); mail with an acknowledgement-of-receipt form to be signed and returned (§ 415.30); and publication in a newspaper "if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article" (§ 415.50).

Searles's position arguably finds support in unpublished United States District Court opinions that have construed section 413.30 as authorizing alternative methods of service of a summons, specifically by email, when traditional methods have proved ineffective. For example, in *Beqa Lagoon Support Services v. Hasselman* (S.D.Cal., Oct. 26, 2020, No. 20-CV-968 JLS (AHG)) 2020 U.S.Dist. Lexis 198751, the court, after noting that rule 4(e)(1) of the Federal Rules of Civil Procedure (28 U.S.C.) (rule 4(e)(1)) authorizes service of process on an individual within the United States in conformity with the law of the state in which the district court is located, ruled section 413.30 permitted service by email after the plaintiff's attempts to effect service by personal delivery through a certified process server and the sheriff and by certified mail and Federal Express had been unsuccessful, provided the plaintiff demonstrated email was reasonably calculated to provide actual notice of the pending case. Similarly, in *Twitch Interactive, Inc. v. Johnston* (N.D.Cal., Jan. 19, 2017, No. 16-CV-03404-BLF) 2017 U.S.Dist. Lexis 7787 the court granted the plaintiff's motion to serve defendants at their email addresses pursuant to rule 4(e)(1) and section 413.30, finding that the plaintiff had made substantial efforts to personally serve the defendants with the summons and complaint and that service by email was reasonably calculated to provide actual notice. (Accord, *Facebook, Inc. v. Banana Ads, LLC* (N.D.Cal., Mar. 27, 2012, No. C-11-3619 YGR) 2012 U.S.Dist. Lexis 42160 [authorizing email service of process pursuant to rule 4(e)(1) and section 413.30]; see also *Floyd v. Saratoga Diagnostics, Inc.* (N.D.Cal., June 5, 2020, No. 20-CV-01520-LHK) 2020 U.S.Dist. Lexis 100279 [certified mail authorized as alternative method for

14

service of summons pursuant to rule 4(e)(1) and section 413.30 when personal service was unsuccessful].)

In marked contrast to these decisions, the district court in *Federal Insurance Company v. Caldera Medical Inc.* (C.D.Cal., Apr. 8, 2015, No. 2:15-CV-00393-SVW-PJW) 2015 U.S.Dist. Lexis 187119 rejected the plaintiff's request, made pursuant to rule 4(e)(1) and section 413.30, to authorize an alternative method of service of a summons—one not expressly authorized by the Code of Civil Procedure—explaining section 413.30 "permits a court to direct service 'in a manner which is reasonably calculated to give actual notice to the party to be served' so long as 'no provision is made in this chapter or other law for the service of summons.' [Citation.] The problem is that the Court just discussed the provisions providing for service of summons upon authorized agents. See Cal. Code Civ. P. § 416.90.[9] Thus, the Court cannot invoke Section 413.30 to circumvent Section 416.90." (Accord, *Oh My Green, Inc. v. Cuffe* (C.D. Cal., Mar. 20, 2020, No. CV-20-2509 PA PVCx) 2020 U.S.Dist. Lexis 107056 [denying plaintiff's request to serve defendant with the summons, complaint and moving papers in support of a TRO through email; "section 413.30 does not authorize service by alternative means when California law provides other methods for service"].)

We agree with the analysis of the district courts that decided *Federal Insurance Company* and *Oh My Green, Inc.* As discussed, the Legislature has expressly mandated that the

---

9      Section 416.90 provides, "A summons may be served on a person not otherwise specified in this article by delivering a copy of the summons and of the complaint to such person or to a person authorized by him to receive service of process."

15

respondent in a proceeding for a civil harassment restraining order be provided notice of the hearing, together with a copy of the petition and any TRO, only through personal service. (§ 527.6, subd. (m).)  Thus, section 413.30 is inapplicable in this situation:  The necessary prerequisite for the court to authorize an alternative method of service—that "no provision is made in this chapter or other law for the service for summons"—is unsatisfied.  Section 413.30 does not provide, as does, for example, section 308, subdivision (5), of the New York Civil Practice Law and Rules, that the court may order an alternative method of service if the procedures expressly identified by the Legislature prove impractical.  Nor does section 527.6 state personal service is preferred, but other means of service may be employed if personal service is not feasible.

Provisions of the Probate Code make clear that we cannot simply attribute to legislative oversight the absence of any provision authorizing the court to utilize Code of Civil Procedure section 413.30 if personal service in a restraining order case has proved unsuccessful.  Probate Code section 1215 provides for service of notices and other papers in probate proceedings through delivery by mail or personal delivery (and by electronic delivery with consent).  However, Probate Code section 1212 expressly directs the court to section 413.30 and authorizes alternative methods of service if neither of those methods is feasible:  "Unless the court dispenses with the notice, if the address of the person to whom a notice or other paper is required to be delivered pursuant to [Probate Code] Section 1215 is not known, notice shall be given as the court may require in the manner provided in Section 413.30 of the Code of Civil

16

Procedure."[10]  The Legislature's decision not to include a comparable provision for alternate forms of service in section 527.6 precludes our rewriting the statute to allow service other than by personal delivery.  (See *People v. Leal* (2004) 33 Cal.4th 999, 1008 ["'It is our task to construe, not to amend, the statute. . . .  We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used'"]; *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63 73-74 ["[a] court may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed"].)

4. *Requiring Personal Service of the Notice of Hearing Did Not Violate Searles's Due Process Rights*

Even if not expressly authorized by statute or court rule, California courts have inherent authority to facilitate an indigent

---

[10]  The limited scope of section 413.30 is illustrated by the Law Revision Commission Comment to section 1250.130, enacted in 1975, which specifies additional requirements when service by publication has been ordered in eminent domain proceedings. After noting that sections 415.10 through 415.30 generally provide the manner of service in an eminent domain proceeding, the Commission explained, where service by publication is ordered pursuant to section 415.50, section 1250.130 requires that the court also order the plaintiff to post a copy of the summons and complaint on the property and record a lis pendens to increase the likelihood interested parties will receive actual notice of the proceeding.  Citing section 413.30 the Commission then suggested, "The court should by order also give appropriate directions as to the manner of posting, e.g., location and number of copies."  (Cal. Law Revision Com. com., 19 West's Ann. Code Civ. Proc. (2007 ed.) foll. § 1250.130, pp. 490-491.)

17

civil litigant's equal access to the judicial system by recognizing exceptions to, or variations in, general procedural requirements. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 605.)  Thus, in *Cohen v. Board of Supervisors* (1971) 20 Cal.App.3d 236, 239, at a time when fee waivers in this state did not include costs for service of process, the court of appeal, relying on section 413.30, held indigent parties in family law cases whose spouses could not be found for personal service and who could not afford to pay costs of service by publication could instead serve their spouses by mailing to their last known addresses and posting at those locations, a method of service of process described by the United States Supreme Court in *Boddie v. Connecticut* (1971) 401 U.S. 371 [91 S.Ct. 780, 28 L.Ed.2d 119].[11]  The *Cohen* court explained, "[T]here really is no other provision made by law for service, because although publication is theoretically possible, practically there is no way of efficient publication save by the doubtful expedient of ordering public officials to make expenditures which no statute authorizes them to make.  This would be a measure justifiable, if at all, only if it were the sole available means of carrying into execution the service of summons which plaintiffs, as indigent litigants, rightfully demand as an incident of due process."  (*Cohen*, at p. 239.)

---

[11]    The Supreme Court in *Boddie v. Connecticut, supra,* 401 U.S. 371 held the due process clause of the Fourteenth Amendment requires states to allow an indigent party to divorce proceedings to litigate without payment of fees and costs. "[A]bsent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard."  (*Id.* at p. 377.)

18

Searles's inability to obtain a permanent restraining order against Archangel, however, is not a product of her indigency. Searles paid no filing fee because she alleged, pursuant to section 527.6, subdivision (y), that Archangel had threatened violence against her or had acted in a manner that made her reasonably fear for violence. Similarly, there was no cost to Searles to have the sheriff's department attempt to personally serve Archangel because the court granted her request for a fee waiver. The same difficulty Searles faced in trying to have Archangel personally served, a statutory prerequisite to issuance of a permanent restraining order, would confront any petitioner seeking a restraining order. There is no equal access issue here.

Searles's contention her inability to proceed against Archangel conflicts with a crime victim's rights to justice and due process, as set forth in article I, section 28, subdivision (b), of the California Constitution, is misplaced. It may be that Archangel's threatening conduct toward Searles constituted a crime. If so, he is subject to arrest; and, as his victim, Searles may qualify for a pretrial protective order pursuant to Penal Code section 136.2, subdivision (a), and, following a conviction, a more extended restraining order, valid for up to 10 years, under Penal Code section 646.9, subdivision (k). In seeking a civil harassment restraining order, however, Searles does not come within the scope of the victims' rights provisions of the California Constitution.

Even though her petition was ultimately dismissed, Searles's rights were fully protected in this case. The superior court rescheduled the hearing on her request for a permanent restraining order multiple times, from August 14, 2018 through January 31, 2019, continuing the TRO she obtained against

19

Archangel for more than six months and providing her an extended opportunity to effect personal service. In addition, when it dismissed the petition, the court did so without prejudice, advising Searles that if Archangel was continuing to harass her—something that seems unlikely given his disappearance—she could file a new petition and begin the process again, including obtaining another TRO if one was justified. Nothing more was required.

## DISPOSITION

The order dismissing the petition is affirmed. Searles is to bear her own costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.